# CHARLESTON.

## STATE v. GRAVELY.

Submitted September 4, 1909.   Decided December 1, 1909.

1. INDICTMENT AND INFORMATION—*Separate Counts—Conclusions.*

    A charge interpolated in an indictment for murder after the main charge in the form of the statute, and preceding the conclusion, "Against the peace and dignity of the state," that defendant had been before sentenced in the United States, to a period of confinement in the penitentiary for the murder of one Laws, in Surry County, North Carolina, does not constitute a separate and distinct count, nor render the indictment bad for want of a proper conclusion. (p. 376).

2. HOMICIDE—*Presumption of Law—Evidence of Murder.*

    An instruction that, where a homicide is proved, the presumption is that it is murder in the second degree, and that the burden is on the state to raise it to first degree murder, and on the accused to show want of malice and other facts and circumstances reducing the offense to manslaughter, or to any lessor offense provable under the indictment, is not bad, or inapplicable, though the evidence be not sufficient to support a verdict higher than voluntary manslaughter; the presumption referred to being a presumption of law arising from the construction given section 4200, Code 1906, and not a presumption of fact, depending on the facts and circumstances attending the homicide, and shown in evidence. POFFENBARGER, Judge, dissenting in part. (p. 376).

3. SAME—*Instructions—Self Defense.*

    On a trial for murder, where self defense is relied on, and instruction telling the jury, among other things, that "it can not be inferred from the bare act of striking, without any dangerous weapon, that the aggressor intended to kill, and that unless there be a plain manifestation of a felonious intent, no assault, however violent, without a deadly weapon, will justify killing the assailant under the plea of necessity," and by which the remainder of the instruction attempting to apply this law to the facts proven is limited, is erroneous as calculated to mislead and deceive the jury. It is not the law that "no assault, however violent, without a deadly weapon, will justify the klliing of an assailant." (p. 377).

Error to Circuit Court, Raleigh County.

Robert Gravely was convicted of murder in the second degree, and brings error.                                    *Reversed.*

*W. R. Thompson, W. H. McGinnis, G. W. Williams,* and
*File & File,* for plaintiff in error.

*William G. Conley, Attorney General,* for the State.

MILLER, PRESIDENT:

Upon an indictment in the criminal court of Raleigh county,
charging defendant with the murder of one Lilly, the jury
found him guilty of murder in the second degree, and the
judgment thereon of the criminal court, that he be imprisoned
in the penitentiary for twelve years, being affirmed on appeal
by the circuit court, he has brought the case here for review
on writ of error.

The sufficiency of the indictment, tested by demurrer there-
to in the court below, is challenged here. The objection to it
is, that it is in two counts, and that the first count does not,
as required by section 8, article 2, of the Constitution, con-
clude "Against the peace and dignity of the State." The
theory is that because there is interpolated therein, after the
words charging the crime, and before the conclusion, "Against
the peace and dignity of the State," the charge that defendant
had been before sentenced in the United States, to a period of
confinement in the penitentiary for the murder of one Laws,
in Surry county, North Carolina, the latter charge consti-
tutes a separate and distinct count to which the conclusion,
"Against the peace and dignity of the state," alone applied.
The point is without merit.

The next error assigned is the giving of instructions num-
ber one and two for the state. The first is: "The Court fur-
ther instructs the jury that where a homicide is proved, the
presumption is that it is murder in the second degree, and the
burden is on the state of showing that it is murder in the
first degree; and upon the accused of showing that it was
without malice, and is, therefore, only manslaughter, or that
he acted lawfully and is therefore not guilty, and in arriving
at a verdict in this case as to the degree of guilt, if any, the
jury should take into consideration all the evidence, both that
for the state and defense." This instruction was held good
in *Hill* v. *Commonwealth,* 2 Grat. 595, and *State* v. *Cain,* 20
W. Va. 709; but it is said to be inapplicable; that the pre-

sumption of murder in the second degree, propounded by the instruction, is not true of every homicide, regardless of the facts and surrounding circumstances; that such presumption arises only in cases where the killing is shown to have been with malice aforethought: and that such presumption does not arise where the evidence, as it is claimed is the fact in this case, shows defendant guilty of no higher offense than voluntary manslaughter. For this proposition, *State* v. *Beatty*, 51 W. Va. 233, seventh point of the syllabus is relied on, namely, that "Where the killing, although intentional, is done in passion, in heat of blood, upon sudden provocation, by gross indignity, out of tenderness for the frailty of human nature, the law reduces the offense to manslaughter;" also, *Lewis* v. *Commonwealth*, 78 Va. 732, holding that, "malice is presumed from the fact of the killing unaccompanied with circumstances of extenuation; and the burden of disproving malice is on the accused." We do not think the instruction amenable to the criticism. Section 4200, Code 1906, makes all murder, except murder by poison, lying in wait, etc., murder in the second degree. The presumption intended by the instruction is the presumption of law arising from the construction given this statute. *State* v. *Dodds*, 54 W. Va. 287, 296. It was not intended to assert, and the instruction does not in terms assert, that all murder, regardless of the facts and circumstances of the crime, is presumed to be murder in the second degree. On the contrary, it properly submitted to the jury the question of the want of malice necessary to reduce the offense to manslaughter, and told the jury also that if defendant acted lawfully he might be found not guilty of any crime.

The objection to instruction number two is more serious. It is as follows: "The court further instructs the jury that it cannot be inferred from the bare act of striking, without any dangerous weapon, that the aggressor intended to kill, and unless there be a plain manifestation of a felonious intent, no assault, however violent, without a deadly weapon, will justify killing the assailant under the plea of necessity; and although the jury may believe from the evidence in this case, that the deceased, Bud Lilly, and A. J. Shumate, or either of them, did in fact assault the prisoner, Robert Gravely, by striking him with the fist, yet the prisoner would not be

justified in shooting and killing the said Bud Lilly, unless there was a plain manifestation of a felonious intent upon the part of the deceased, Bud Lilly, and A. J. Shumate, or either of them, to kill the said Robert Gravely, or to inflict upon him some serious bodily harm;

"And in passing upon the case as to the imminency of the danger which threatened the prisoner, and the necessity of the killing in the first instance the prisoner is the judge; viewing it from the prisoners stand point at the time, but he acts at his peril as the jury must pass upon his action in the premises." The vice of this instruction is not in the conclusion in its first paragraph, but in the first proposition thereof, by which the latter is limited, namely, "that it cannot be inferred from the bare act of striking, without any dangerous weapon, that the aggressor intended to kill, and unless there be a plain manifestation of a felonious intent, no assault, *however violent, without a deadly weapon,* will justify killing the assailant." We think that although the conclusion of the instruction contains the words, "or to inflict upon him some serious bodily harm," the first clause of the instruction was calculated to mislead and deceive the jury, and to induce the belief that defendant was justified in killing his assailant in self defense, the assault being without a dangerous weapon, unless there was a plain manifestation of a felonious intent to kill him, "however violent" the assault may have been. This is not the law. It is conceded that when one is assaulted he may repel force with force, and may even take the life of his assailant, if it is plainly manifest that he is in danger of sustaining serious bodily harm. By section 4208, Code 1906, if one by any means cause another bodily injury with intent to maim, disfigure, disable, or kill, he is guilty of a felony. The evidence in this case shows and tends to show: That Bud Lilly, the deceased, was, at the time the shot was fired, assisting Shumate, the principal assailant, and had then on his person a pistol, which he had taken from the bed in the room where the homicide occurred; that defendant had not assaulted, or attempted to assault, either of his assailants; that both Lilly and Shumate were larger and stronger men than himself, and that at the time he fired the fatal shot, Shumate was striking him in the face with his fist, and the blood from his

wound was running into his eyes and blinding him. Wharton on Hom. (3rd Ed.) 500, says, that "if an assault was made by a strong man upon a weak one, and the battery extended so far beyond the provocation as to amount to a felony, or as to endanger the life of the person assaulted, he might be justified in using a deadly weapon in resistance. So, one is justified in using a deadly weapon to defend himself from a public whipping, by one greatly his superior physically. And where a man is assaulted by a mob of angry and excited men, some of whom are armed, and he kills one of them with a deadly weapon, an instruction is erroneous which limits his right to defend himself to assaults made by the deceased only, leaving out of consideration his right to use a weapon if necessary to protect himself from impending harm at the hands of the mob." In *Davis* v. *The People,* 88 Ill. 350, one of the cases cited by Wharton, the syllabus is: "It is not true, as a matter of law, that, where one menaces, and threatens to strike, and does strike another with his hand or fist, the latter is not, in any case, justified in using a deadly weapon upon the assailant. Whether the use of such weapon is justified, must depend upon the fact whether the party was in imminent peril of receiving great bodily harm, or had reasonable ground to so believe, and that such act was necessary to prevent the same." In *Davis* v. *State.* 152 Ind. 34 (71 Am. St. Rep. 322, 325), the Indiana court says, referring to instructions: "These instructions inform the jury that a person assaulted by another, who has no weapon in his hands, or the appearance thereof, is not justified in using a deadly weapon in defense of his person. If that is the law, then in every conceivable case of a violent attack upon one by another, no matter what the circumstances may be, no matter what the disparity between the ages and physical strength of the two may be, the assaulted party must stand and take his chances of being knocked down and stamped into a jelly, or of being choked to death before he can lawfully use a weapon in his defense. Though the appearance and circumstances of the assault were such as to induce the reasonable belief to be honestly entertained by the defendant that his life was in danger, or that he was in danger of great bodily harm from the assault, he could not lawfully use a deadly weapon to repel such assault, unless the assailant had a weapon in his

hands, or the appearance thereof, no matter how many he had about his person. This is not the law. * * * *But, we have a case where an assailant was convicted of manslaughter, where he used nothing but his hands, thereby choking his victim to death, and that judgment was affirmed in this court." Citing *Shields* v. *State,* 149 Ind. 395. In *Rogers* v. *State,* 60 Ark. 76 (46 Am. St. Rep. 154, 158), that court says: "One who intentionally commits a great bodily injury upon the person of another may or may not be guilty of a felony, depending upon the circumstances; but, as such an injury may, under some circumstances, be committed, and still the offender not be guilty of a felony, it is therefore not accurate to define 'great bodily injury' as 'a felony committed on the person.' · What constitutes a great bodily injury; and whether the circumstances in any case are such as to justify one in believing that such an injury is about to be committed upon him, and in defending himself against it, are matters which must be left, to a great extent to the jury." In *High* v. *State,* 26 Texas App. 545 (8 Am. St. Rep. 488, 490), that court quotes approvingly from *Commonwealth* v. *Drum,* 58 Pa. St. 1, opinion by Justice Agnew, as follows: "If a man approaches another with an evident intention of fighting him with his fists only, and where, under the circumstances, nothing would be likely to eventuate from the attack, but an ordinary beating, the law cannot recognize the necessity of taking life with a deadly weapon. In such a case (pain or bloodshed supervening), it would be manslaughter. * * * But a blow or blows are just cause of provocation; and if the circumstances indicated to the slayer a plain necessity of protecting himself from great bodily injury, he is excusable if he slays his assailant in an honest purpose of saving himself from this great harm." These authorities we think render the instruction bad in the particulars indicated, calling for reversal of the judgment and a new trial.

The judgment below refusing a new trial on the ground that the verdict was not supported by the evidence is also assigned as error; but as there is to be a new trial because of a misdirection to the jury, it would be improper for us to consider the evidence.

·The judgment below will be reversed, and the defendant awarded a new trial.          *Reversed.*

BRANNON, JUDGE. (*dissenting*) :

I have often expressed my opposition to the reversal of fair trials for grave crimes upon technical grounds or overdrawn refinements. I cannot agree to reverse because of instruction No. 2. Its meaning is, that if, one assault another with a deadly weapon, the fact of being so armed tells the party assaulted that he is in danger of death or great bodily harm, and he may kill his assailant; but that if the party is not so armed such danger does not appear to be imminent, and he would not be justifiable in killing his assailant, unless it manifestly appears that he is in such danger. It does not say that the person assaulted may not kill if his assailant is not so armed. It simply says that from the mere act of striking with the fist the party cannot justify the killing. If this were not so any man when struck by another with the fist could justify killing. Such a doctrine would place a small premium on human life. This instruction does tell the jury that even if the party have no weapon, but is striking only with the fist, the party assailed may take the life of his assailant, provided it does appear from the violence of the assault that he was in great danger of death or bodily injury. This instruction concedes the right to the prisoner, if the assault, though only with the fist, was so violent as manifestly to disclose an intent to do great bodily harm, to take the life of his assailant. Did not that jury understand from this instruction that though the deceased was not armed, yet that the prisoner had tne right to kill him if the assault was so violent as to manifest an intent to inflict upon the prisoner death or great bodily harm? Is not that the plain meaning of the instruction? The instruction did not mislead the jury. It is not reasonable to assume that it did when it is so readily susceptible of a meaning.

Judge WILLIAMS unites in this dissent.

POFFENBARGER, JUDGE, (*dissenting in part*) :

I fully concur in the reversal of the judgment and granting of a new trial. I have no fault to find with the opinion, except in so far as it says the presumption, alluded to in the second point of the syllabus, is one of law and founded upon,

or grows out of, section 4200 of the Code of 1906. In my opinion, it is wholly unnecessary to say whether it is a presumption of law or a presumption of fact. I would not decide that question at all in this case. I do not think the presumption, whatever it may be, grows out of the statute. It was recognized at common law, long before our statute was passed. It is simply a rule, formulated for the guidance of courts and juries, to cover the omission of proof of express malice, which is not always susceptible of direct, positive proof. It being impossible to look into the mind and heart of the prisoner, to ascertain his intent and purpose at the time he fired the fatal shot or struck the mortal blow, the existence of malice, the basic ingredient of murder, must be established by inference. It cannot be established in any other way. Therefore, the law says if a homicide has been proven, the jury may, and ought, to infer malice, on the part of the accused, from his act in taking the life of a fellow man. Stated in a different way, the rule is that the jury are to presume the killing to have been malicious. Now, whether this is matter of law or matter of fact, is a mere unsubstantial and generally immaterial question of definition. Whether the presumption be regarded as one of law or of fact, its function and effect upon court and jury are just the same. It did not take its birth from our statute because it always existed. Blackstone, Vol. II, p. 199, says: "Lastly, the killing must be committed with malice aforethought, to make it the crime of murder. This is the grand criterion which now distinguishes murder from other killing; and this malice prepence, *malitia praecogitata,* is not so properly spite or malevolence to the deceased in particular, as any evil design in general, the dictate of a wicked, depraved, and malignant heart. * * * And it may be either express or implied in law. Express malice is when one, with a sedate, deliberate mind and formed design, doth kill another; which formed design is evidenced by external circumstances discovering that inward intention; as lying in wait, antecedent menaces, former grudges, and concerted schemes to do him some bodily harm. * * * Also in many cases where no malice is expressed the law will imply it, as, where a man wilfully poisons another; in such a deliberate act the law presumes malice though no particular enmity can be proved. And

if a man kills another suddenly, without any or without a considerable provocation, the law implies malice; for no person, unless of an abandoned heart, would be guilty of such an act upon a slight or no apparent cause." See also 1 Russell on Crime, p. 667. Murder is a common law crime. All its elements are determined by the common law. No statute in this State undertakes to say what shall constitute murder. Our statute merely alters the common law rule of pleading, divides murder into two degrees, defining the first, and declaring all other murder to be of the second, and prescribes punishment different from that inflicted by the common law. It does not make all killing murder, nor say any thing about a presumption, nor define murder, nor indicate the kind or amount of evidence necessary to establish it. As, at common law, malice only was established by inference from the fact of killing, not express intent to take life, the essential element of what our statute makes murder of the first degree, the division of murder into two degrees necessarily limits the operation of the common law presumption to murder of the second degree. A malicious killing constitutes murder of that degree, and malice, both under the statute and at common law, was inferred from the act of killing. The additional elements of deliberation and premeditation must rest upon additional evidence. The criterion of first degree murder is specific intent to take life and there must be sufficient evidence in the case to enable the jury to find that fact. We have another rule which says, if the accused struck the mortal blow with a deadly weapon, upon slight provocation or without any at all, he is presumed to have intended the consequences of his act, and is, therefore, *prima facie*, guilty of murder of the first degree. Here, again, the real intent and purpose of the slayer is established by inference from the means by which, and the circumstances under which, he effected the killing. At common law, these circumstances made out a case of express malice. In view of these principles, I am firmly of the opinion that the presumption in question was not born of the statute, but is limited and restrained by the statute. There being no degrees in murder at common law, the presumption of malice covered the whole field of murder. Whar. Hom., section 177. The statute stops it at murder of the second

degree. Though the courts, in stating the rule, have sometimes mentioned the statute, I am not aware of any decision that says the rule emanates from it.

As to whether these presumptions are of law or fact, Mr. Bishop says the question cannot be regarded as settled. 2 Bish. New Crim. Law, section 673a *et seq.* The conclusions vary throughout the several jurisdictions and even in the same jurisdiction. In *Stale* v. *Dodds,* 54 W. Va. 289, 297, Judge WARREN MILLER said, with the concurrence of the Court, the presumption of specific intent to take life is one of fact.

I think the instruction, embodying the rule in question, was properly given. Its propriety depends upon the existence of evidence, tending to prove a malicious killing, not upon the definition or origin of the rule in any degree. Both at common law and under the statute, the infliction of death is evidence of malice. This evidence, though it may not be controlling, nor sufficient, under the circumstances of the case, to sustain a verdict of guilty, will always justify the giving of such an instruction. *State* v. *Taylor,* 57 W. Va. 228. In that case we said: "Whether these presumptions be regarded as matters of law or fact cannot affect the question under consideration. Even if presumptions of fact only, they are important elements of evidence which can be affirmatively and authoritively brought to the attention of the jury only by the action of the court. How else can they be proved? What document other than a law book will prove them? What witness can swear to them? Must they be brought into the case by the mental operations and knowledge of the jurors only, unaided by rules and principles born of centuries of experience? Most assuredly not. Obviously the court may properly direct attention to them. Viewed in this light, the court says no more than that they are evidence, an assertion which is indisputably true. The jury are neither told that they prove the whole case against the prisoner nor that they are entitled to any fixed amount of weight as against other evidence. What amount of evidence to the contrary will overcome such presumption is always left to the jury, but there must be some." We may add here that, in giving such an instruction, the court merely advises the jury of inferences which they may draw, and are in duty bound to draw, from the evidence be-

fore them.   To justify the giving of such an instruction, it is only necessary that there be such evidence, and it is plainly ob-vious that there is such evidence in every instance or case in which a homicide has been proven.   In passing upon the pro-priety of an instruction, the court does not, and should not, weigh the evidence, to determine whether or not it will sustain a finding, agreeable to the hypothesis stated in the instruction. The only inquiry arising upon the application for an instruc-tion is, whether there is evidence appreciably tending to prove the facts supposed in the instruction.   *State* v. *Clifford,* 59 W. Va. 1.   The sufficiency of the evidence to sustain a verdict must be raised in a different way.   It must be challenged by a motion to exclude, a demurrer to the evidence or a motion to set aside the verdict.   *State* v. *Clifford,* cited.