STATE OF WEST VIRGINIA *v.* LUKIE CURRY

(No. 7219)

Submitted September 20, 1932.    Decided September 27, 1932.

*C. C. Chambers,* for plaintiff in error.

*H. B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

HATCHER, PRESIDENT:

Lukie Curry seeks to reverse a conviction of voluntary manslaughter for the killing of Eugene Thompson in Logan County, August 30, 1931.

The evidence developed by the state is substantially as follows: Curry and Thompson lived on adjoining lots. About two weeks before the killing they had an altercation across their division fence in which Thompson grabbed Curry's hat and struck him in the face with it. Curry backed away and shouted, "You had better be gone when I

come back or I'll kill you.'' A short while afterwards Thompson was arrested upon complaint of Curry's father and jailed for drunkenness. During Thompson's committment he was relieved of his pistol and a pocket knife. Following his release from jail he was heard to say upon two occasions that he had no knife. On the morning of the homicide he came to the home of John Kalota (about three hundred feet from Currey's house) in a half drunken condition, saying he was going to find out who broke his window (broken while he was in jail), and went in the direction of Curry's house. In a few moments Kalota's attention was attracted by a pistol shot and he saw Thompson on the porch at Curry's home, and Curry shoot two times from his doorway and Thompson fall backward upon the porch. Kalota hurried over and observed an open pocket knife on the porch near the body of Thompson, who was then dead. Later an officer picked up a knife on the porch which was introduced in evidence. The wife of the deceased produced a pocket knife which she said was the only one he had and which she had obtained from the jailer several days after the killing. Her son corroborated this evidence.

In substance the evidence for defendant is that he had known the deceased for several years and had never had any trouble with him prior to the altercation at the fence. At that time defendant says deceased called him to the fence ostensibly to shake hands but instead struck him with his own hat and drew a pistol and threatened to kill him. Deceased was drinking then and had the reputation of being a dangerous man when drinking. He threatened defendant's life after being let out of jail which threat was communicated to the defendant. A pounding on defendant's door awakened him about 6:30 on the fatal morning. After learning the identity of the caller, he secured his pistol and opened the door holding the pistol down at his side. Deceased was on the porch, with his right hand in his pocket, and cursed defendant, asking why he broke out the window light. Defendant replied that he new nothing about the window light, to go away, and that he wasn't going to take any more chances with him. Deceased cursed defendant again, and

saying, "I'm going to kill you," started forward, drawing his hand from his pocket. As he did so, defendant shot until deceased began to fall. While he was falling, an open knife dropped to the porch. The defendant is corroborated as to the details of the shooting by his brother and a woman who were in the house at the time. The officer who took the knife from the porch identified it as the same knife he had taken from Thompson when he was under arrest a few days prior to the killing. The officer said he returned the knife to Thompson when the latter was released from custody. In rebuttal several witnesses who had seen the knife on the porch said that the knife introduced by the officer was not the one they saw.

The defendant contends that he shot Thompson in self-defense and should be acquitted on that ground as a matter of law. The evidence as to the open knife on the porch is unsatisfactory. The record does not disclose the demeanor of the defendant and his witnesses when testifying; so we cannot say that the jury should have accepted implicitly their testimony as to the alleged overt act of Thompson. Besides, the defendant was secure from invasion and attack within his walls until he invited both by opening the door. He gives as his reason for securing his pistol that he expected Thompson *to hurt or kill him* when he should open the door. Instead of remaining in safety within his closed house and avoiding the impending conflict, he willfully precipitated it. One may defend his home when invaded, and one not at fault may stand his ground when attacked. But one in no imminent danger from a minatory foe may not purposely confront him and then invoke self-defense for an immediate homicide. The law nominates no private executioner. See generally Bishop's New Cr. Law (8th Ed.), sec. 869, par. 1 and 3; Wharton on Homicide (3rd Ed.), sec. 290.

Error is charged in the giving of certain instructions and to the conduct of an attorney assisting in the prosecution. We have gone carefully into both charges and find no prejudice to the defendant.

The judgment of the circuit court is affirmed.

*Affirmed.*