295 S.E.2d 820

**STATE of West Virginia**

v.

**Barry SMITH.**

**No. 15106.**

Supreme Court of Appeals of West Virginia.

Sept. 17, 1982.

Laurie Garrigan, Asst. Atty. Gen., Charleston, for appellee.

Bradley J. Pyles, Crandall, Pyles, Crandall & Poyourow, Logan, for appellant.

HARSHBARGER, Justice:

Upon an indictment for malicious wounding, Barry Smith was convicted of battery in the Circuit Court of Wetzel County. Smith's primary contention on appeal is that the State's instructions incorrectly stated the applicable law of self-defense and prejudiced his defense.

The incident leading to this indictment arose during a labor dispute involving the Wetzel County Hospital in New Martins-ville, West Virginia. Smith was a labor organizer for a hospital worker's union. He struck Wetzel County prosecuting attorney William D. Lemon.

The Wetzel County Hospital is a public hospital, managed by a Board of Trustees appointed by the Wetzel County Commission. In the summer of 1979, employees of the hospital requested the board to recognize the National Union of Hospital and Health Care Employees, Local No. 1199, as their collective bargaining representative. After the board refused union recognition, a majority of the hospital's employees went on strike on August 1, 1979.

The strike did not end quickly. On October 23, 1979, the commission met at the county courthouse. Present were two of the three commissioners, Lemon, a large number of striking employees of the hospital, representatives and members of various labor organizations, and Smith. The union representatives were present to ask the county commission to take certain action to end the strike.

The meeting was adjourned by the commissioners without permitting delegations to address it. Lemon and the commissioners left the courtroom and went to the prosecuting attorney's office located on the same floor of the courthouse.

Smith, accompanied by two other people, followed Lemon and the commissioners through a reception room and into the doorway to Lemon's office. The testimony is conflicting about what was said, although it is undisputed that Smith requested the commissioners to reconvene the meeting and hear the labor representatives, and that Lemon indicated that the commissioners did not want to listen to them. It is also undisputed that Lemon asked Smith to leave his office at least once and that Smith refused to do so.

The State's evidence was that Smith, upon being asked to leave by Lemon, responded by saying "F..k you", and urged people accompanying him to take over the prosecutor's office. The defendant denied cursing the prosecutor or urging a takeover of his office. In any event, a fight erupted between Lemon and Smith during

which the prosecutor suffered a laceration to his tongue. Smith admitted striking Lemon but contends that he did so in self-defense after the prosecutor grabbed him by the neck and shoulders and attempted to forcibly move him out of the doorway. Several witnesses testified to this version of the facts. The prosecutor admitted placing his hand on Smith's shoulder but said he used only minimal force.

Smith contends State's Instructions 4 and 5 do not accurately state the law about self-defense and that, when considered in connection with the prosecutor's closing argument emphasizing these instructions, there is a high probability that the jury was mislead into believing that he did not have a right to defend himself because of his words and conduct before the fight. More particularly, Smith contends that the instructions do not make it clear that a person does not lose his right of self-defense unless he intentionally and deliberately provokes a fight, either by challenging the victim to combat or by directing words to the victim calculated and intended to provoke an assault.

The two instructions given over objection are:

### STATE'S INSTRUCTION NO. 4

"The Court instructs the jury that a defendant cannot avail himself of the law of self-defense if his misconduct brought on the combat, although his antagonist struck the first blow. And the misconduct of the defendant which will deprive him of the benefit of the law of self-defense is not confined to physical acts, but contemplates, extends to, and includes such violent and indecent language as is well calculated to provoke a breach of the peace.

### STATE'S INSTRUCTION NO. 5

"The Court instructs the jury that the phrase 'breach of the peace' is generic and includes every act of violence which tends to disturb that sense of security

which every person feels necessary to his comfort and for the security of which government is instituted and maintained. It is further stated that the 'peace', as used in the law in connection with breaches of the peace, is meant the tranquility enjoyed by the citizens of a municipality or community where good order reigns among its members."

Instruction 4 was taken from language found in the text of *Scott v. Commonwealth,* 143 Va. 510, 129 S.E. 360 (1925). It is not a standard jury instruction in Virginia and it fails to make clear that a person does not lose his self-defense right unless he uses offensive language *for the purpose of provoking an assault.* See also, *Jordan v. Commonwealth,* 219 Va. 852, 252 S.E.2d 323 (1979); *State v. Curry,* 112 W.Va. 549, 165 S.E. 810 (1932); *State v. Terrall,* 79 W.Va. 358, 92 S.E. 127, 129 (1916).

■ The general rule is broadly stated in 6A C.J.S. *Assault and Battery* § 91 (1975):

The provoking act on the part of accused, depriving him of the right of self-defense, need not be such as would give the party attacking him such right; but, before one accused of assault can be deprived of his right of self-defense on the ground of provoking the difficulty, he must have said or done something, for the purpose of inducing an attack upon him, which was calculated to bring about that result. (Footnote references omitted.)

Our cases recognize the general common law rule that one who is at fault or who is the physical aggressor can not rely on self-defense; but we have not located a discussion about particular language that may result in forfeiture of the right to claim self-defense.[1]

Courts elsewhere have seldom discussed this point; but the Supreme Court of Iowa, reversing a second-degree murder conviction, stated the rule as follows:

---

1. A victim of insulting words is not without recourse. West Virginia's insulting words statute, *W.Va.Code,* 55–7–2 [1932], provides a legal remedy for insulting words, such as "son of a bitch", which are not published. *Mauck v. City of Martinsburg,* 167 W.Va. 332, 280 S.E.2d 216 (1981); *see also, Cunningham v. Martin,* 170 W.Va. 411, 294 S.E.2d 264 (1982).

"Defamation or opprobrious epithets, not uttered for the purpose of bringing about opportunity to kill or do great bodily harm, do not constitute such an act of aggression or provocation as to deprive the defendant of the right to claim self-defense." *State v. Davis*, 209 Iowa 524, 528, 228 N.W. 37, 39 (1929).

In *State v. Robinson*, 213 N.C. 273, 280, 195 S.E. 824, 829 (1938), the Court found that a trial court erred by instructing that a defendant would be at fault and could not rely on self-defense "if he used language calculated to bring on a controversy and it does so." The Court found the proper test to be whether the language was calculated and intended to bring on a fight, and a fight did ensue.[2]

State's Instructions 4 and 5, particularly when read together, improperly describe behavior that will deprive a person of his right to assert self-defense. Instead of informing the jury that the privilege of self-defense is only lost where one intentionally provokes an assault and battery, the instructions spoke of indecent language that would disturb the tranquility enjoyed by the citizenry of the community. That definition is not the law, and the probabilities are quite strong that Smith was prejudiced by it. The fact that the prosecutor took full advantage of these instructions buttresses our conclusion that Smith's conviction must be reversed.

The judgment of the Circuit Court of Wetzel County is reversed, the verdict is set aside, and a new trial is awarded.

Reversed; verdict set aside; new trial awarded.

---

**2.** Restatement (Second) of Torts § 69(a) (1965), treats deliberate provocation by words or conduct as a consent to bodily contact. Comment *a* states in part:

"Mere provocation by words or conduct, no matter how insulting, does not destroy the privilege of self-defense, even though a reasonable man should realize that the provocation will probably induce the attack. But if the actor actually intends his provocative words or actions to induce an attack, they amount to a challenge to fight, and, as such, to a consent similar to that given in a case of mutual affray. In the case of a fight or affray by mutual consent, each party gives consent to those blows from which he is unable to protect himself. But each consents to the other using such force as is reasonably necessary to defend himself against his opponent's attack."