540 S.E.2d 586

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Eric Kenneth WYKLE, Defendant Below, Appellant.**

**No. 27662.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 2000.

Decided Oct. 27, 2000.

---

Richard H. Lorensen, Greenbrier County Public Defender, Lewisburg, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, for the Appellee.

PER CURIAM:

Eric Kenneth Wykle, defendant/appellant (hereinafter referred to as "Mr. Wykle"), ap-

peals his conviction and sentence for the crime of unlawful assault. Mr. Wykle was prosecuted in the Circuit Court of Greenbrier County on a single count indictment charging him with malicious assault. A jury convicted him of the lesser included offense of unlawful assault. The circuit court sentenced Mr. Wykle to one to five years in the State penitentiary. The sentence was suspended. Mr. Wykle was placed on probation for 18 months, with the condition that he serve 90 days in jail and 30 days on home incarceration. The sole issue before this Court is whether the trial court committed error by denying Mr. Wykle's motion for judgment of acquittal because the State failed to prove beyond a reasonable doubt that he did not act in self-defense in committing the crime charged. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we conclude that the Circuit Court of Greenbrier County did not commit error by denying Mr. Wykle's motion for judgment of acquittal. The judgment is therefore affirmed.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On October 29, 1998, at approximately 9:00 p.m., Mr. Wykle was at the home of his uncle, Gregory D. Mankins. While there, Mr. Wykle made a telephone call to the home of Harold Frye Loomis, Jr. Mr. Wykle called to speak with Mr. Loomis' girlfriend, Connie Spence.[1] During Mr. Wykle's telephone conversation with Ms. Spence, Mr. Loomis interrupted and told Mr. Wykle not to call his home.[2] A verbal argument ensued between Mr. Wykle and Mr. Loomis.

Within minutes after the first telephone call, Mr. Wykle made a second call to Mr. Loomis' home. Mr. Loomis answered the second telephone call. Although the testimony was conflicting, it was clear that Mr. Loomis advised Mr. Wykle that he was going to make sure that the constant telephone calls ceased.

Shortly after ending the telephone conversation with Mr. Wykle, Mr. Loomis drove to the home of Mr. Mankins to confront Mr. Wykle. When Mr. Loomis entered Mr. Mankins' home, Mr. Wykle was sitting in a chair in the kitchen. Mr. Mankins was also in the kitchen. A five to ten minute conversation took place between Mr. Loomis and Mr. Wykle.[3] Thereafter, Mr. Loomis struck Mr. Wykle on the head with his hand.

Mr. Wykle got up from his chair after being struck by Mr. Loomis and picked up a small knife. A heated discussion occurred after Mr. Wykle picked up the knife. Conflicting evidence was presented as to whether Mr. Loomis attacked Mr. Wykle while he held the knife, or whether Mr. Wykle attacked Mr. Loomis. However, a fight ensued which left Mr. Loomis lying on the floor with nine stab wounds to his body.[4]

Mr. Mankins was able to stop the fight and take the knife from Mr. Wykle. The police and an ambulance were called. After the police arrived and took statements, Mr. Wykle was placed under arrest.[5] Mr. Loomis was taken to a hospital, where he remained for two days.[6]

On February 2, 1999, a grand jury indicted Mr. Wykle on a charge of malicious wounding. A jury trial was held on May 5 and 6, 1999. Mr. Wykle defended himself on the theory of self-defense. The jury rejected the defense and convicted Mr. Wykle of the less-

---

1. Mr. Wykle and Ms. Spence had previously lived together. Ms. Spence broke up with Mr. Wykle and moved in with Mr. Loomis.

2. Prior to October 29, Mr. Wykle had repeatedly called Mr. Loomis' home in an attempt to renew his relationship with Ms. Spence.

3. The substance of their conversation involved Mr. Wykle's constant telephone calls to Mr. Loomis' home. Mr. Loomis asked Mr. Wykle to come outside to settle the matter. However, Mr.

Wykle declined by stating that he had recently undergone mouth surgery.

4. The wounds were inflicted to his hand, shoulder, back and buttocks.

5. No charges appear to have been brought against Mr. Loomis.

6. Mr. Loomis sustained no serious injury from the stab wounds.

er included offense of unlawful assault.[7] Mr. Wykle filed post-trial motions seeking relief from the conviction and sentence. The trial court denied the motions.

## II.

### STANDARD OF REVIEW

■ Mr. Wykle asserts that the State failed to prove beyond a reasonable doubt that he was *not* acting in self-defense by stabbing Mr. Loomis. We have held that "[t]he trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review[.]" *State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996). This Court explained the standard of review for a claim of insufficiency of evidence in syllabus point 1 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995) as follows:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

We further elaborated in syllabus point 3 of *Guthrie* as follows:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.[8]

■ This Court addressed the matter of a self-defense claim in *State v. Baker*, 177 W.Va. 769, 771, 356 S.E.2d 862, 864 (1987) as follows:

> It is peculiarly within the province of the jury to weigh the evidence upon the question of self-defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence.

Quoting, Syl. pt. 5, *State v. McMillion*, 104 W.Va. 1, 138 S.E. 732 (1927). *See also State v. Gibson*, 186 W.Va. 465, 473–474, 413 S.E.2d 120, 128–129 (1991) (per curiam); *State v. Schaefer*, 170 W.Va. 649, 653, 295 S.E.2d 814, 819 (1982) (per curiam). With the above legal principles in view, we turn to the merits of this appeal.

---

7. Both the crime of malicious wounding and unlawful assault are contained in W. Va.Code § 61-2-9(a) (2000) as follows:

> (a) If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall be guilty of a felony, and, upon conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

8. *See* Syl. pt. 2, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996) ("When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.").

## III.

## DISCUSSION

■ The record is clear. Mr. Wykle repeatedly stabbed Mr. Loomis on the evening of October 29, 1998. At trial, Mr. Wykle sought to justify his actions under the theory of self-defense. We have recognized that "[o]nce there is sufficient evidence to create a reasonable doubt that [an assault] resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense." Syl. pt. 4, *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978). Mr. Wykle contends that the State failed to meet its burden in this case.[9]

■ We have held that " 'a person has the right to repel force by force in the defense of his person, ... and if in so doing he uses only so much force as the necessity, or apparent necessity, of the case requires, he is not guilty of any offense, though he kill his adversary in so doing.' " *State v. W.J.B.*, 166 W.Va. 602, 608, 276 S.E.2d 550, 554 (1981), quoting *State v. Laura*, 93 W.Va. 250, 256–57, 116 S.E. 251, 253 (1923). On the other hand, this Court noted in *State v. Smith*, 170 W.Va. 654, 656, 295 S.E.2d 820, 822 (1982), "the general common law rule that one who is at fault or who is the physical aggressor can not rely on self-defense[.]" *See State v. Watson*, 164 W.Va. 642, 651, 264 S.E.2d 628, 633 (1980) ("Ordinarily, self-defense is not available to the aggressor who precipitates an affray without legal justification."). A person "in no imminent danger from a minatory foe may not purposely confront him and then invoke self-defense for an immediate [assault]." *State v. Curry*, 112 W.Va. 549, 551, 165 S.E. 810, 811 (1932).

■ Mr. Loomis was the initial aggressor. Mr. Loomis intentionally struck Mr. Wykle on the head with his hand while the two men were arguing.[10] At the time of the attack, Mr. Wykle had no weapon on his person. Mr. Wykle testified that he told Mr. Loomis he did not want to fight because of his recent mouth surgery. Clearly, our cases support the use of reasonable force by Mr. Wykle to defend himself when Mr. Loomis slapped him. *See Collins v. Bennett*, 199 W.Va. 624, 628, 486 S.E.2d 793, 797 (1997) ("[T]he privilege of self-defense is lost only where one attempting to assert the defense intentionally provokes battery from another."); Syllabus, *State v. Smith*, 170 W.Va. 654, 295 S.E.2d 820 (1982) ("The general rule is that a person accused of an assault does not lose his right to assert self-defense, unless he said or did something calculated to induce an attack upon himself.").

■ The critical factor for consideration is whether Mr. Wykle used excessive force in defending himself against Mr. Loomis. To properly assert the theory of self-defense "[t]he amount of force used in defense must not be excessive and must be reasonable in relation to the perceived threat." *Collins*, 199 W.Va. at 628, 486 S.E.2d at 797. Our law is clear that when a person "is threatened only with non-deadly force, he may use only non-deadly force in return." *State v. W.J.B.*, 166 W.Va. 602, 609, 276 S.E.2d 550, 554 (1981). *See State v. Knotts*, 187 W.Va. 795, 801, 421 S.E.2d 917, 923 (1992) ("[T]he defendant may only use non-deadly force where he is threatened only with non-deadly force."). A defendant "may not use a deadly weapon unless his own life is imperiled or it is necessary to ward off great bodily harm." Syl. pt. 7, in part, *Shires v. Boggess*, 72 W.Va. 109, 77 S.E. 542 (1913). *See State v. Gravely*, 66 W.Va. 375, 379, 66 S.E. 503, 505 (1909) ("Whether the use of such weapon is justified, must depend upon the fact whether

---

9. The crime in this case did not occur at the home of Mr. Wykle. At the time of the assault, Mr. Wykle was in the home of Mr. Mankins. *See* Syl. pt. 4, *State v. Preece*, 116 W.Va. 176, 179 S.E. 524 (1935) ("A man attacked in his own home by an intruder may invoke the law of self-defense without retreating.").

10. The mere fact that Mr. Wykle engaged in an argument with Mr. Loomis did not, in and of itself, strip Mr. Wykle of the ability to assert a self-defense theory. This Court has long recognized that " '[m]ere provocation by words or conduct, no matter how insulting, does not destroy the privilege of self-defense, even though a reasonable man should realize that the provocation will probably induce the attack.' " *State v. Smith*, 170 W.Va. 654, 657 n. 2, 295 S.E.2d 820, 822 n. 2 (1982), quoting, Restatement (Second) of Torts § 69(a) (1965).

the party was in imminent peril of receiving great bodily harm, or had reasonable ground to so believe, and that such act was necessary to prevent the same.").

We believe the use of a deadly weapon under the circumstances to be unjustified. Nothing in the record indicated Mr. Loomis possessed a deadly weapon, or that Mr. Wykle was in imminent danger of death or great bodily harm. Mr. Loomis confronted Mr. Wykle with nothing more than his bare hands. Both men were relatively the same size in height and weight.[11] While our cases would support the reasonable use of Mr. Wykle's bare hands to repel any further attack by Mr. Loomis, we believe the jury properly found that the use of a knife to stab Mr. Loomis nine times was excessive in relation to any reasonably perceived danger. *See State v. Vest*, 98 W.Va. 138, 126 S.E. 587, 589 (1925) ("The jury must put themselves as far as they can in the shoes of the [defendant] at the time of the affray and determine from all the circumstances whether he had reasonable grounds for apprehending danger of his life or great bodily harm, and that he did believe the danger imminent, and that such design would be accomplished, and that he believed it necessary in order to protect himself to use the ... weapon in his defense.").

## IV.

## CONCLUSION

Based upon the foregoing, the conviction and sentence in this case by the Circuit Court of Greenbrier County are affirmed.

Affirmed.

11. Mr. Loomis was approximately 5'8" tall and weighed 186 pounds. Mr. Wykle was approximately 6' tall and weighed 180 pounds.