# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0892** (Ohio County 19-F-23)

**Mitchell H.,**
**Defendant Below, Petitioner**

**FILED**

**September 4, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mitchell H.,[1] by counsel John M. Jurco, appeals from the Circuit Court of Ohio County's August 29, 2019, amended sentencing order stemming from his conviction for domestic battery. The State of West Virginia, by counsel Andrea Nease Proper, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 20, 2018, the Wheeling Police Department responded to a report of a domestic disturbance in an apartment building. When the officers arrived at the residence within the apartment building, they found the front door torn off its hinges to the point of being unusable. The officers knocked on the hanging door and petitioner answered the door, allowing the officers to enter the residence. While petitioner denied that an incident had occurred, officers observed broken glass throughout the residence.

Mahogany Hall, a tenant of a different apartment in the building, approached the responding officers and told them that she witnessed part of the altercation between petitioner and

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

T.M., the victim, and called 9-1-1. Ms. Hall detailed that T.M. knocked on her front door and, while she was speaking to T.M, petitioner approached T.M., grabbed her, punched her in the face, and bit her. Ms. Hall told the responding officers that T.M. admitted petitioner had hit her on multiple occasions. Two juveniles with Ms. Hall also detailed an incident ten days prior wherein petitioner was choking T.M. on the lawn of the apartment complex.

The responding officers approached T.M. and saw that she had a bloody lip and red marks on both cheeks, but T.M. did not consent to being photographed. Petitioner was arrested, and officers noted that petitioner had two prior domestic violence convictions in West Virginia within the past two years. On January 14, 2019, petitioner was indicted on one count of domestic battery and one count of domestic assault. Petitioner pled not guilty at his arraignment on January 31, 2019.

Prior to trial, petitioner moved for the exclusion of his criminal record, which included prior domestic battery arrests and convictions. Notably, T.M. was the victim in at least four of petitioner's prior arrests, and petitioner had twenty-two misdemeanor arrests in the ten years leading up to his trial. Petitioner also moved for a jury instruction on self-defense. The court deferred ruling on the motions until the evidence was presented at trial.

Petitioner's trial began on April 2, 2019. At trial, Corporal Robert McConnell of the Wheeling Police Department testified that he responded to the domestic disturbance call on the night in question. Corporal McConnell testified that when he arrived at the scene, he recognized T.M. and petitioner, whom he knew to be in a domestic relationship from seeing them together amongst the homeless population. Corporal McConnell advised that he was approached by Ms. Hall upon his arrival, who indicated that T.M. had come to her apartment and that Ms. Hall had observed petitioner strike T.M. in the face. Corporal McConnell testified that he observed redness around T.M.'s mouth and cheeks, and that she had a busted lip that was bleeding slightly. Per Corporal McConnell, T.M. would not allow the officers to photograph her injuries.

T.M. testified at petitioner's trial that she had been in a domestic partnership with petitioner for the past three years and that they shared an apartment. She admitted that she would not allow the officers to photograph her on the evening of the events surrounding petitioner's criminal charges, stating it "wasn't necessary." She further denied that she had any injuries. T.M. testified that she and petitioner had been drinking and arguing earlier in the day in question. She admitted to hitting petitioner, but testified that he never hit her. T.M. testified that she appeared at trial to tell the jury that she was not hit by petitioner.

Ms. Hall also testified at petitioner's trial. Per Ms. Hall's testimony, she called 9-1-1 because she saw petitioner hit T.M. after she opened her apartment door. Ms. Hall later encountered T.M. at the public library, where T.M. tried to talk Ms. Hall out of testifying at petitioner's trial, stating that if Ms. Hall did not testify, petitioner would not be convicted.

Petitioner did not testify at his trial, and the defense did not present any witnesses. Prior to

2

closing arguments, petitioner again sought a self-defense instruction, which the State opposed.[2] The circuit court refused to give the self-defense instruction, as T.M. testified that petitioner never hit her.

During closing arguments, the prosecuting attorney discussed witness credibility and compared the testimony of the investigating officer and Ms. Hall to the testimony of T.M. Specifically, the State pointed out the inconsistencies with T.M.'s testimony and noted that T.M. may have had motivation to cover for petitioner, her boyfriend, whereas Ms. Hall and Corporal McConnell had no ulterior motive. On rebuttal, the prosecuting attorney stated:

> . . . if you believe if someone has said or acted inconsistent with their testimony, you can reject their testimony because it's not truthful. She came in here and lied.

> It's a hard thing to say, to call somebody a liar, but you saw it happen today because two people testified [to] two completely different things. . .

The prosecuting attorney closed with the following: "[w]e're asking you to do your civic duty, to go back there, and don't cherry pick. Don't cherry pick [T.M.'s] testimony. You know it was false. Dismiss it in its entirety and render a verdict of guilty. Thank you."

The jury returned a verdict finding petitioner guilty of domestic violence. At his sentencing hearing on May 1, 2019, petitioner requested probation with mental health treatment. Petitioner apologized for his actions, indicating that he was "in a blackout" at the time, and noted that although he has been incarcerated "a lot of times" he "never really learned something off it." The State argued that petitioner should be incarcerated due to his long criminal history.

On May 1, 2019, the circuit court sentenced petitioner to a term of one to five years of incarceration, and the sentencing order was filed on May 13, 2019. On May 17, 2019, petitioner filed a motion to modify the sentence pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure. An amended sentencing order was entered on August 29, 2019, sentencing petitioner to not less than one nor more than five years in the custody of the West Virginia Division of Corrections for his felony conviction of third offense domestic violence, with credit for time served. Petitioner appeals from the amended sentencing order.

On appeal, petitioner raises three assignments of error. First, he argues that the trial court abused its discretion when it refused to give a self-defense instruction. Next, petitioner claims that the circuit court abused its discretion in denying his motion to strike portions of Ms. Hall's testimony and allowing prior bad act testimony to be presented to a jury. Finally, petitioner asserts that the circuit court erred when it allowed the State to represent that T.M. was a liar and instruct the jury to disregard her testimony.

First, petitioner argues that the circuit court erred when it failed to give a self-defense instruction. Petitioner asserts that he left the apartment and T.M. reignited the confrontation near

---

[2] Petitioner also sought a mutual combat instruction. The State opposed this instruction, noting that there was no law on mutual combat in West Virginia.

Ms. Hall's apartment, noting that "[s]ince retreat no longer worked and commotion still raged, he struck her, and this arguably in an attempt [to get her to] leave him alone." The State, however, contends that the evidence does not support a self-defense instruction. Specifically, the State noted that a self-defense instruction was not necessary because T.M. testified that petitioner did not strike her. Further, the State argues that a self-defense instruction is inconsistent with Ms. Hall's testimony.

"When called upon to review a trial court's rejection or acceptance of a specific jury instruction, this Court generally applies an abuse of discretion standard." *State v. McGuire*, 200 W. Va. 823, 828, 490 S.E.2d 912, 917 (1997). Further, this Court has long relied upon the principle that "'[i]nstructions must be based upon the evidence and an instruction which is not supported by evidence should not be given." Syl. Pt. 4, *State v. Collins*, 154 W. Va. 771, 180 S.E.2d 54 (1971).[3]

When faced with a proposed self-defense instruction,

> this Court noted in *State v. Smith*, 170 W.Va. 654,656, 295 S.E.2d 820, 822 (1982), "the general common law rule that one who is at fault or who is the physical aggressor can not rely on self-defense[.]" *See State v. Watson*, 164 W.Va. 642, 651, 264 S.E.2d 628, 633 (1980) ("Ordinarily, self-defense is not available to the aggressor who precipitates an affray without legal justification."). A person "in no imminent danger from a minatory foe may not purposely confront him and then invoke self-defense for an immediate [assault]." *State v. Curry*, 112 W. Va. 549, 551, 165 S.E. 810, 811 (1932).

*State v. Wykle*, 208 W. Va. 369, 373, 540 S.E.2d 586, 590 (2000).

As discussed in *Wykle*, petitioner cannot avail himself of the affirmative defense of self-defense where, as here, the testimony suggests that he was the aggressor. Per Ms. Hall's testimony, T.M. had left the apartment and was at Ms. Hall's door when petitioner confronted T.M. and struck her. Thus, based upon the record, we conclude that the circuit court did not abuse its discretion when it refused to give a self-defense instruction as requested by petitioner.

Petitioner further argues that the circuit court erred when it denied his motion to strike Ms. Hall's testimony and allowed prior bad act testimony to be presented to the jury. The testimony central to petitioner's argument is Ms. Hall's testimony that petitioner "was already hitting on [T.M.]." The State maintains that this statement represents *res gestae* and referenced the beginning of the incident for which petitioner was being tried--not prior bad acts.

Our standard of review for evidentiary rulings has been stated as follows:

---

[3] Further, "when reviewing a challenge to jury instructions, we consider the instructions given as a whole and not in isolation to determine whether the instructions adequately state the law and provide the jury with an ample understanding of the issues and the controlling principles of law. *State v. Bradshaw*, 193 W. Va. 519, 457 S.E.2d 456 (1995)." *State v. LaRock*, 196 W. Va. 294, 308, 470 S.E.2d 613, 627 (1996).

4

The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 1, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995).

This Court has noted that

"[e]vents, declarations and circumstances which are near in time, causally connected with, and illustrative of transactions being investigated are generally considered *res gestae* and admissible at trial." Syl. Pt. 3, *State v. Ferguson*, 165 W. Va. 529, 270 S.E.2d 166 (1980), *overruled on other grounds by State v. Kopa*[,] 173 W. Va. 43, 311 S.E.2d 412 (1983).

Syl. Pt. 7, *State v. Dennis*, 216 W. Va. 331, 607 S.E.2d 437 (2004).

The doctrine of *res gestae* has been traced back nearly a century in West Virginia, and this Court has stated that "[w]here appearances indicate that one has suffered an injury, one's statement, if spontaneous and reasonably coincident with and explanatory of the occurrence, may be regarded as part of it and be competent evidence under the doctrine of res gestae." Syl., in part, *Collins v. Equitable Life Ins. Co.*, 122 W. Va. 171, 8 S.E.2d 825 (1940). The State argues that this is precisely what occurred in this case – T.M. was injured by petitioner and, just after being hit by him, spontaneously told Ms. Hall that petitioner had been hitting her and asked her to call the police. After reviewing the record, we do not believe that the circuit court abused its discretion by denying petitioner's motion to strike Ms. Hall's statement.

Finally, petitioner claims that two of the prosecutor's comments during closing arguments violated the parameters of proper prosecutorial action and violated petitioner's constitutional right to a fair trial. Notably, he concedes that he did not object to the statements at trial. Thus, this Court must review the statements under a plain error standard. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). As to the plain error doctrine, in *Miller*, we held that "[h]istorically, the 'plain error' doctrine 'authorizes [an appellate court] to correct only 'particularly egregious errors' . . . that 'seriously affect the fairness, integrity or public reputation of judicial proceedings[.]'" 194 W. Va. at 18, 459 S.E.2d at 129.

Although petitioner had the burden of establishing the elements of plain error, petitioner failed to apply the plain error analysis to this matter. Instead, petitioner maintains that "the State should bear the burden of proving that the jury convicted the appellant based on some other reason than obeying the prosecutor's instruction to disregard a witness after debasing and devaluing the testimony by labeling the witness a liar." Inasmuch as petitioner failed to satisfy his burden, we

decline to address this assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 4, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison