310 S.E.2d 863

**STATE of West Virginia**

v.

**Scotty Gene PHELPS.**

**No. 15803.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

Michael E. Froble, Asst. Atty. Gen., Charleston, for appellee.

Brown H. Payne, Payne & Payne, Beckley, for appellant.

PER CURIAM:

Scotty Gene Phelps appeals his conviction by a jury in the Circuit Court of Raleigh County of voluntary manslaughter for the killing of Michael Lester. On March 9, 1981, the appellant shot Lester with a sawed-off shotgun after Lester, armed with a pistol, entered the Phelps residence in Crab Orchard and attempted to rob the appellant's mother, Gladys Phelps. After the shooting, Lester ran a short distance from the house, where he collapsed on the ground and died.

The appellant was indicted on April 20, 1981, by a Raleigh County Grand Jury, on a charge of murder. At the trial the appellant introduced testimony to show that he had acted in self-defense. On July 16, 1981, the jury found the appellant guilty of the lesser offense of voluntary manslaughter. By order entered September 15, 1981, the appellant was sentenced to imprisonment in the penitentiary for a term of not less than one nor more than five years.

The appellant assigns as error the refusal of the trial court either to direct a verdict of acquittal or to set aside the verdict in light of evidence that appellant's act in killing Lester was a justifiable defense of himself, his mother, and his home. The appellant also assigns as error the refusal of the trial court to give four instructions pertaining to the law of self-defense and the protection of one's home from unlawful intrusion. We find that two of the four instructions should have been given, and we hold that the court erred in refusing them. Accordingly, we reverse the judgment of the trial court and award appellant a new trial.

I

The testimony at trial showed that on the afternoon of March 9, 1981, the appellant was asleep in his bedroom in the home he shared with his mother in Crab Orchard. He had fallen asleep after taking pain medication for a self-inflicted gunshot injury of his ankle. Ms. Phelps and Steve West, a friend with whom the appellant had been drinking earlier in the day, were in the living room. At approximately 4:00 p.m. Michael Lester, who was not known to the appellant, his mother, or West, came to the front door of the Phelps residence and asked to see the appellant. There was testimony that Lester also asked Ms. Phelps if the appellant wanted to buy some drugs. Ms. Phelps, who answered the door, told Lester the appellant was asleep and asked him his name. Lester refused to answer and produced a pistol which he pointed at Ms. Phelps, backing her into the house. Once in the living room, Lester also trained the pistol on West and told him not to move.

Ms. Phelps testified that Lester then demanded money. West testified that Lester asked for "pot, money and drugs." Ms. Phelps told Lester to "wait a minute" and went into the kitchen. From the kitchen, she entered the room where the appellant was sleeping, awakened him and told him that a man with a gun was attempting to rob her. Ms. Phelps then returned to the living room via the kitchen. She testified that she then took some money from her pocket and laid it next to a plastic bag on a chair. West testified that Ms. Phelps returned from the kitchen carrying only a plastic bag which she placed on the chair.

Meanwhile, the aroused appellant loaded a sawed-off shotgun. He then proceeded

from his bedroom through a door to his mother's bedroom and from there to a bookcase near a doorway opening into the living room. In this position, the appellant was apparently to the left of and slightly behind Lester. The appellant could not see, nor was he seen by, his mother or West. The appellant could see Lester and the pistol however. He saw Lester move toward the chair and bend over to pick up whatever was lying there.

It was at this point that the fatal shot was fired. The appellant testified that as Lester bent over the chair he called out to him, "Don't move, you MF." The appellant stated that he fired when Lester began to straighten up and turn toward him, swinging his pistol around. Gladys Phelps testified that she did not hear the appellant call out to Lester, but saw Lester turning in the appellant's direction as he was straightening up. She believed that Lester caught sight of appellant as he entered the room. Steve West testified that Lester was already erect and facing away from the appellant's location when he was shot. West did not hear the appellant call out to Lester before the shot was fired or see him move in the appellant's direction. West also testified that as Lester picked up the bag, the pistol was pointed toward the floor.[1]

After the shot was fired, Lester staggered and ran out of the house. The appellant made no attempt to pursue him. Lester ran a short distance from the house before he collapsed on the ground. Lester's cousin, Howard D. Jones, who was in the vicinity at the time, heard the gunshot and saw Lester run from the Phelps residence. He ran to the spot where Lester had fallen and testified that Lester said "I'm shot", then mentioned appellant's name, and finally, said "I'm dead". Lester died shortly thereafter as the result of a shotgun wound to the lower back in the area of the left kidney. A neighbor saw Jones take something from Lester's body and run away.

The police arrived at the Phelps residence shortly after the shooting. The appellant admitted from the outset that he had shot Lester, although at first he told the investigating officer that he had fired a pistol, apparently under the impression that possession of a sawed-off shotgun was a federal offense. After parts of the shotgun were discovered in appellant's bedroom, however, the appellant admitted to one of the investigating officers that he had shot Lester with a shotgun. He directed Steve West to retrieve the shotgun barrel from the place West had hidden it immediately after the shooting. The appellant was then placed under arrest on a charge of malicious wounding.

Jones eventually led the police to a pistol and a bag which he testified he had taken from Lester's person and thrown into a patch of weeds. The contents of the bag were later tested and identified as marijuana and a number of non-controlled substances. No money was found in the bag or on Lester's body.

## II

Appellant contends that there was no evidence presented at trial to prove that he was guilty of voluntary manslaughter, and that the trial court erred in not directing a verdict of acquittal. In Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), we formulated the standard for assessing the sufficiency of evidence:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate

---

1. The inconsistency between the testimony of Ms. Phelps and Steve West may be attributable to the fact that Ms. Phelps was indicted as an accessory to the murder. Her counsel was present at her son's trial, and she was advised to invoke her privilege against self-incrimination.

and that the consequent injustice has been done.

█ The evidence produced at trial, when viewed in the light most favorable to the prosecution was sufficient to convince the jury of the guilt of the appellant beyond a reasonable doubt. Therefore, the trial court's refusal to direct a verdict of acquittal was not erroneous.

### III

█ We turn next to appellant's assertion that the trial court erred by not setting aside the verdict of the jury on the ground that it was contrary to overwhelming evidence of self-defense. Where we are faced with such a challenge to a jury's verdict, we apply the following principle, as stated in Syllabus Point 5 of *State v. McMillion*, 104 W.Va. 1, 138 S.E. 732 (1927): "It is peculiarly within the province of the jury to weigh the evidence upon the question of self-defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence." *Accord, State v. Schaefer*, 170 W.Va. 649, 295 S.E.2d 814 (1982).

█ We noted in both *McMillion* and *Schaefer* that the jury was "fully instructed at the instance of the defendant upon every phrase of the case." *McMillion*, 104 W.Va. at 11, 130 S.E. at 736; *Schaefer*, 170 W.Va. at 652, 295 S.E.2d at 817. As appears in our discussion of instructional errors, infra, we cannot say here that the jury was "fully instructed upon every phase of the case," including the issue of self-defense. We therefore decline to make a determination of whether the verdict was contrary to the evidence.

### IV

█ Appellant contends that the trial court erred in refusing four of his offered instructions.[2] In Syllabus Point 2 of *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550

(1972), we set out the standard for assessing the propriety of refusing a proper instruction supported by the evidence: " 'In this jurisdiction where there is competent evidence tending to support a pertinent theory of a case, it is error for the trial court to refuse a proper instruction, presenting such theory, when so requested.' Syllabus Point 4, *State v. Hayes*, 136 W.Va. 199, 67 S.E.2d 9 (1951)."

Defendant's Instruction No. 12 reads as follows:

The Court instructs the jury that although upon a trial for murder, where the defendant relies upon self-defense, in justification of the killing, [such evidence must appear from the facts and circumstances of the case, and the State always has burden of] proving all the elements of murder if it seeks a conviction, beyond a reasonable doubt, and to the exclusion of every other reasonable hypothesis, and if, in the case on trial, the burden is upon the prisoner to prove that he was acting in self-defense by a preponderance of the evidence, yet this in no wise relieves the state, if it seeks a conviction, from proving the prisoner guilty beyond every reasonable doubt, and to the exclusion of every reasonable hypothesis, and if the state does not so prove the defendant guilty beyond every reasonable other hypothesis, they must find the defendant not guilty.[3]

█ The trial court properly refused this instruction on the ground that it placed too heavy a burden upon the defendant to show he acted in self-defense. An instruction which charged that an accused was required initially to prove self-defense by a preponderance of the evidence, and which failed to require the State to disprove self-defense beyond a reasonable doubt, was held to be reversible error in *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1979).

---

**2.** According to the record, one of these instructions, Defendant's No. 15, the refusal of which is challenged here, was withdrawn. Therefore, we need not address trial court's failure to give this instruction.

**3.** The bracketed words were substituted for the following language in the instruction as offered: "... the burden is upon the defendant, yet this in no wise relieves the state from...." We are unable to determine who suggested the amendment or caused it to be inserted.

*Accord, State v. Clark,* 171 W.Va. 74, 297 S.E.2d 849 (1982).

██ Defendant's Instruction No. 3 reads as follows: "The Court instructs the jury that when a person reasonably apprehends that another intends to attack him for the purpose of killing him or doing him serious bodily harm, then such person has the right to arm himself for his own necessary self-defense." The trial court believed the instruction to be a correct statement of the law, but refused it because of the inapplicability of the instruction to the evidence.

██ We agree with the trial court that the instruction properly stated the law of this jurisdiction. *See State v. Preece,* 116 W.Va. 176, 179 S.E. 524 (1935). Unlike the trial court, however, we find a direct application of the law expressed in the proposed instruction to the evidence offered by the appellant. He testified that his mother woke him up, saying, "that there was a guy trying to rob her and she told me that he had a gun." The prosecuting attorney asked appellant on cross-examination why he had armed himself. Appellant responded, "Because my mother told me that he had a gun and I wasn't going in the room unarmed." Therefore, the trial court improperly refused to give the instruction to the jury.

Defendant's Instruction No. 6 reads as follows:

The jury are instructed that a man may repel force by force, in defense of his person, or his home, against one who manifestly endeavors, by violence or surprise, to commit a known felony upon either; and in these cases he is not obliged to retreat, but may upon either; and in these cases he is not obliged to retreat, but may pursue his adversary until he has freed himself from all danger.

The trial court refused this instruction believing that a word had been omitted. The omission detected by the trial court was actually a copying error which could have been easily corrected. The language in *Stoneham v. Commonwealth,* 86 Va. 525, 10 S.E. 238 (1889), from which the instruction was taken, reads:

A man may repel force by force, in defense of his person or his property,[4] against one who manifestly endeavors by violence or surprise to commit a known felony upon either, and in these cases is not obliged to retreat, but may pursue his adversary until he has freed himself from all danger.

Aside from the word left out, the trial court did not reveal any reason for refusing this instruction.

██ Defendant's Instruction No. 6 is a correct statement of the law and should not have been refused by the trial court. In Syllabus Point 1 of *State v. W.J.B.,* 166 W.Va. 602, 276 S.E.2d 550 (1981), we stated: " 'A man attacked in his own home by an intruder may invoke the law of self-defense without retreating.' Syllabus Point 4, *State v. Preece,* 116 W.Va. 176, 179 S.E. 524 (1935)." Furthermore, in Syllabus Point 2 of *W.J.B.,* we stated:

The occupant of a dwelling is not limited in using deadly force against an unlawful intruder to the situation where the occupant is threatened with serious bodily injury or death, but he may use deadly force if the unlawful intruder threatens imminent physical violence or the commission of a felony and the occupant reasonably believes deadly force is necessary.

This Court recognized in *State v. Preece,* 116 W.Va. at 124, 179 S.E. at 527, that, "[w]hile it may be true that many men rather than to run the risk of killing or of seriously injuring another with a deadly weapon, under any circumstances, would retreat from and even abandon their own home, the settled principles of our law do not require it."

██ We find that there was sufficient evidence to justify giving Defendant's Instruction No. 6, especially when we read Court's Instruction No. 1[5] in which the

---

**4.** The trial court substituted "home" for "property".

**5.** The trial record shows that the word "State's" was lined through, and "Court's" was inserted in

trial court told the jury to accept as fact that "the decedent, Lester, was in the act of committing a felony, robbery by the presentment of a gun, commonly called 'Armed robbery with a dangerous weapon...'"[6]

■ We notice that Court's Instruction No. 1 is pregnant of error. It fails to fully inform the jury on the law with respect to crime prevention in one's home as a justifiable defense to homicide, and it is therefore in direct contraposition to the rule enunciated in Syllabus Point 2 of *State v. W.J.B.*, *supra.*

■ As in Court's Instruction No. 1, we notice that State's Instruction E[7] fails to mention the alternative justification for the use of deadly force, i.e. prevention or termination of a felony in one's home. In addition, we find no authority for allowing the jury to determine that the killing was not justified if they believe by a preponderance of the evidence, rather than beyond a reasonable doubt, that the defendant or his

mother "were being threatened with death or seriously (sic) bodily harm by Lester and the gun he had in his hand..."

There were no objections to the latter two instructions at trial, nor have the issues raised by Court's Instruction No. 1, or State's Instruction E, been briefed or argued. Because we are reversing appellant's conviction on other instructional errors, we decline the opportunity to further discuss these instructions. Suffice it to say that they do not adequately cover the defense theories contained in Defendant's Instructions Nos. 3 and 6.

■ In the absence of other proper instructions, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966), and in view of sufficient evidence to justify giving instructions offered by appellant, we hold that the refusal of Defendant's Instruction Nos. 3 and 6 constitutes reversible error.

Accordingly, we reverse the judgment of the Circuit Court of Raleigh County, and

its place. The court handed counsel the instruction, saying that "probably instead of the State's it ought to be considered the Court's."

6. Court's Instruction No. 1 reads:

The Court instructs the jury that under the evidence in this case the decedent, Lester, was in the act of committing a felony, robbery by the presentment of a gun, commonly called "Armed Robbery with a dangerous weapon", and if you believe from the evidence in this case, that the defendant and/or his mother were placed in personal danger for their safety, then defendant had the right to defend his home to the extent of taking the decedent's life because in the eyes of the law the killing was justifiable and you should acquit the defendant.

However, if you believe beyond a reasonable doubt from the circumstances of this case, that neither the defendant nor his mother were in personal danger and that the defendant did not entertain a reasonable and honest belief that he or this mother were in real and actual danger of being seriously hurt or killed, then, in that case, the defendant was not justified in killing in order to protect and recover the personal property testified about in this case, whether such personal property was $2.00, or a plastic bag containing miscellaneous pills and marijuana, in which case the killing would not be justified, and you should find the defendant guilty of such offense as you find beyond a reasonable doubt that the defendant committed.

7. State's Instruction E reads:

The court instructs the jury that murder by poison, lying in wait, imprisonment, starving, or any wilful, deliberate and premediated killing, or in the commission or attempt to commit arson, rape, robbery or burglary is murder of the first degree, and if you believe by a preponderance of the evidence in this case that the defendant at the time he shot the deceased Lester that neither he nor his mother were being threatened with death or serious bodily harm by Lester and the gun he had in his hand; and if you further believe from the evidence beyond a reasonable doubt that immediately before Lester was shot that he had picked up marijuana and non-controlled pills in the plastic bag testified about and was not threatening anyone, then the defendant could only use such force as was necessary to retrieve the non-controlled pills and to remove Lester from his home; and if you further believe from the evidence that the decedent Lester was not ordered to drop the pills and to remove himself from the house but was shot without notice or warning, then you may consider whether or not the defendant used excessive force against the decedent and if you find that the shooting and killing was not justified in this case, then you may find the defendant guilty of such killing that you believe the evidence and circumstances of the case warrants, keeping in mind that all times you must view the circumstances of the case and the appearances and conditions as they reasonably appeared to the defendant at the time.

we remand this case for a trial consistent with this opinion.

Reversed and remanded.