STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

State of West Virginia,
Plaintiff Below, Respondent

**FILED**

**November 3, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) No. 15-0684 (Fayette County Case Number 15-M-AP-2)

Scott A. Neal,
Defendant Below, Petitioner

MEMORANDUM DECISION

Mr. Scott A. Neal (hereinafter "the Petitioner"), by counsel Brandon Steele, Esq., appeals his conviction for brandishing a deadly weapon, subsequent to a bench trial in the Circuit Court of Fayette County, West Virginia. Respondent State of West Virginia, by counsel Patrick Morrisey, Esq., and Shannon Kiser, Esq., filed a response to the Petitioner's appeal. The Petitioner contends his conviction should be reversed because his actions constituted self-defense in response to his assailants.

Having thoroughly reviewed the appendix record, the parties' briefs and oral arguments, the applicable law, and all other matters before the Court, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

I. Factual and Procedural History

On February 11, 2015, Susan Showalter and her mother, Debbie Showalter, attended a mediation in Fayette County Family Court concerning the custody and placement of Susan Showalter's minor son. The father of the child is Steve Neal, the Petitioner's brother. Steve Neal failed to attend the mediation, and the Showalters thereafter drove to his home, entered the home uninvited,[1] and attempted to remove the minor child. Upon discovering the Showalters in his home, Steve Neal attempted to physically prevent them

---

[1]Susan Showalter stated that Vickie Jones, the Family Court Clerk, had told her that she could go to the Neal residence and try to remove her child.

from removing the child. The Petitioner, who had been living with his brother for four months, was awakened by the altercation and exited his bedroom to discover his brother fighting with Susan Showalter over the minor child.

Susan Showalter testified that the Petitioner held her by the throat up against a wall and pushed her into a storm door, breaking the glass door and causing lacerations on her arms. Debbie Showalter also explained that she hit the Petitioner with an aluminum mop handle to prevent further harm to her daughter as the Petitioner was attacking her. The Petitioner explained the event somewhat differently, stating that the fighting was in close proximity to the front doorway and that Susan Showalter was inadvertently pushed into the door. The Petitioner contends that Susan Showalter struck him in the face and head-butted him while her mother attacked him with the mop handle. He ultimately obtained knives from the kitchen to compel the Showalters to leave the premises.[2]

Debbie Showalter called 9-1-1while still at the residence and informed the operator that the Petitioner had "gotten knives." Debbie Showalter and Susan Showalter thereafter waited outside the home for the arrival of law enforcement. Deputy Richie Callison of the Fayette County Sheriff's Department arrived and interviewed the Petitioner, Steve Neal, Debbie Showalter, and Susan Showalter. Deputy Callison arrested Susan Showalter for trespassing, battery, and domestic battery; Debbie Showalter for assault;[3] Steve Neal for domestic battery; and the Petitioner for brandishing.[4]

On May 5, 2015, the Petitioner was convicted, following a Fayette County Magistrate Court bench trial, of the misdemeanor offense of brandishing a deadly weapon,

---

[2]The parties disagree regarding the types of knives the Petitioner obtained from the kitchen. Susan Showalter claims the knives were steak knives. Debbie Showalter simply described them as a "handful of knives," and the Petitioner claims the knives were butter knives.

[3]Debbie Showalter testified at trial that she had pled "no contest" and that Susan Showalter had "pled guilty to domestic battery and no contest to the other two" charges.

[4]Deputy Callison testified that the Petitioner told him "that it was basically over when he went and got the knife in the kitchen." Further, Deputy Callison said the Petitioner "turned to face them [the Showalters], stated some type of statement saying that he was going to get them out of there, realized he was wrong and dropped the knife."

in violation of West Virginia Code § 61-7-11 (2014).[5] He was sentenced to a $50.00 fine and assessed court costs. No jail time was imposed. On May 21, 2015, the Petitioner appealed his conviction to the Circuit Court of Fayette County.[6]

The appellate trial[7] commenced on June 16, 2015, with Deputy Callison, Susan Showalter, and Debbie Showalter testifying for the State. At the close of the State's case, the Petitioner moved the circuit court to dismiss[8] the action based upon the theory of self-defense. The circuit court denied that motion, finding that although the Showalters had entered the Neal home without permission, the Petitioner's self-defense argument was not credible. The circuit court noted the size differences between the women and the men, recognizing that the Petitioner "appears to be a good-sized individual that could have easily handled the witness, Susan Showalter."[9]

During presentation of the defense, counsel for the Petitioner attempted to call the Petitioner's girlfriend, Ashley Hudson, as a witness. She was also in the home at the time

---

[5]West Virginia Code § 61-7-11 provides:

It shall be unlawful for any person armed with a firearm or other deadly weapon, whether licensed to carry the same or not, to carry, brandish or use such weapon in a way or manner to cause, or threaten, a breach of the peace. Any person violating this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than fifty nor more than one thousand dollars, or shall be confined in the county jail not less than ninety days nor more than one year, or both.

[6]According to the "Order Scheduling Bench Trial," entered May 21, 2015, notice of the scheduled trial was sent to the Petitioner. On the scheduled trial date of June 3, 2015, however, the Petitioner did not appear at the bench trial because he had not received notice at the address he had placed on his appeal documents from magistrate court. Thus, the trial was rescheduled for June 16, 2015.

[7]*See* W.Va. Code § 50-5-13(d) (2016) (permitting appeal of criminal proceeding from magistrate court for new trial in circuit court).

[8]Although the motion was identified as a motion "to dismiss," it is more properly characterized as a motion for judgment of acquittal.

[9]Testimony indicated that the Petitioner's brother was approximately 6'1" or 6'2" and weighed approximately 300 pounds. The Petitioner was 6'3" and weighed 198 pounds.

3

of the incident, but she had not testified in magistrate court.  The State objected, based upon Ms. Hudson's absence on a witness list prior to the hearing.  Despite the Petitioner's assertion that the trial had not been properly noticed, as more fully discussed below, the circuit court prohibited the offered testimony based upon the absence of Ms. Hudson's testimony during the magistrate trial on this matter.

By order dated June 25, 2015, the circuit court held that "the State has proven beyond a reasonable doubt that the Petitioner committed the misdemeanor offense of brandishing a deadly weapon on February 11, 2015, and he is adjudged guilty of the same." The Petitioner appeals to this Court.

## II.  Standard of Review

"This Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence."  *State v. Juntilla*, 227 W.Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citing *State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996)); *accord State v. Minigh*, 224 W.Va. 112, 124, 680 S.E.2d 127, 139 (2009).  We apply the following standard for reviewing a judgment entered after a bench trial:

> "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied.  The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a de novo review."  Syllabus Point 1, *Public Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

Syl. Pt. 1, *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006).

Addressing the standard for challenges to the sufficiency of the evidence, this Court explained as follows in syllabus point three of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden.  An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and

4

must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

In syllabus point one of *Guthrie,* we held:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

194 W.Va. at 658, 461 S.E.2d at 164.

Employing these standards as guidance, we address the arguments of the parties.

## III. Discussion

### A. Self-Defense

The Petitioner first contends that the circuit court improperly denied his motion for acquittal based upon the State's failure to meet the burden of proof beyond a reasonable doubt. He maintains that the evidence is insufficient to sustain his conviction because he acted in self-defense. In that vein, he argues that the circuit court misapplied the standard for self-defense set forth in *State v. Phelps*, 172 W.Va. 797, 310 S.E.2d 863 (1983), by limiting self-defense to those situations where the Petitioner would be in danger of "serious bodily injury or death." The Petitioner argues that the court should have permitted an argument of self-defense where an unlawful intruder threatens imminent physical violence

5

and the occupant reasonably believes deadly force is necessary. In syllabus point five of *Phelps,* this Court explained*:*

> "The occupant of a dwelling is not limited in using deadly force against an unlawful intruder to the situation where the occupant is threatened with serious bodily injury or death, but he may use deadly force if the unlawful intruder threatens imminent physical violence or the commission of a felony and the occupant *reasonably believes* deadly force is necessary.' Syl. Pt. 2, *State v. W.J.B.*, 166 W.Va. 602, 276 S.E.2d 550 (1981).

Thus, in order to prevail on a claim of self-defense, the occupant of a dwelling must show a *reasonable* apprehension of imminent peril. The existence of *reasonable apprehension* must be determined by the trier of fact; in the case of a bench trial, the trier of fact is the trial court. "This Court confers great deference to credibility determinations made following a bench trial because the circuit court has viewed the demeanor of the witnesses." *In re J.S.*, 233 W.Va. 394, 408, 758 S.E.2d 747, 761 (2014); *see also Guthrie,* 194 W.Va. at 669 n.9, 461 S.E.2d at 175 n.9 ("An appellate court may not decide the credibility of witnesses . . . as that is the exclusive function and task of the trier of fact."). Moreover, in syllabus point one of *State v. Schaefer*, 170 W.Va. 649, 295 S.E.2d 814 (1982), this Court held:

> "It is peculiarly within the province of the jury to weigh the evidence upon the question of self-defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence." Syllabus Point 5, *State v. McMillion*, 104 W.Va. 1, 138 S.E. 732 (1927).

Addressing the Petitioner's argument regarding self-defense, the circuit court evaluated the question of whether the Petitioner had reason to brandish the knives and found that the Petitioner could not have *reasonably* perceived any danger, due to the extreme size and physical advantage the men enjoyed over the two women during the physical altercation in the home. Further, the trial court concluded that although the Petitioner did not initiate the altercation between Ms. Showalter and the Petitioner's brother, the Petitioner was clearly the aggressor once he became involved. The trial court found that the Petitioner was therefore not entitled to utilize the affirmative defense of self-defense in this particular instance.

This Court, viewing the evidence in the light most favorable to the State, concludes that a rational trier of fact could have found beyond a reasonable doubt that the

Petitioner did not act in self-defense. The most convincing evidence suggesting an act of self-defense consisted of the Petitioner's testimony that he was assaulted by Susan Showalter. However, a fair reading of the record could also compel the conclusion that this domestic altercation essentially consisted of combat by all four adults. In assessing the credibility of the witnesses, a task well within the discretion of the trial court in this bench trial, the Petitioner was found to be less credible on the issue of self-defense. The trial court specifically stated: "But his [the Petitioner's] testimony, I find not to be credible, I find not to be believable." Further, the order specifies that "[t]he Court finds the defendant's testimony regarding the events to not be credible." A trial court must assess credibility and draw reasonable inferences from the evidence; this Court perceives nothing in the record that would require us to substitute our judgment for that of the trial court. Accordingly, we must reject the Petitioner's argument in this regard.[10]

### B. Brandishing Charge Requires Breach of Peace

The Petitioner also contends the trial court erred in failing to make a specific finding that he "breached the peace" by brandishing the knives.[11] According to the Petitioner, the Showalters initially breached the peace by unlawfully trespassing into the home, starting a physical altercation, and assaulting the Petitioner with a broom handle. Consequently, the Petitioner argues it was impossible for him to have "breached" the peace when it had already been breached by the Showalters. In response, the State contends the facts clearly demonstrate that the Petitioner brandished knives against unarmed women over whom he held a significant size advantage. Further, the State argues that any failure by the trial court to specifically state that the Petitioner breached the peace was harmless, based upon the clarity of the record.

Reviewing the evidence in a light most favorable to the State, it appears that the Petitioner entered the room and became the aggressor in the fight after he was awakened by the scuffle. He pushed Susan Showalter against a wall and shoved her through a glass

---

[10]We note that the Petitioner also contends the trial court erred in finding that he was not a resident of the home. Based upon our review of the evidence and the trial court's rulings, we find this to be harmless, in light of the trial court's finding that the Petitioner had no *reasonable* apprehension of imminent harm and was therefore not engaged in the act of self-defense when he brandished the knives. Thus, his residency at his brother's home is not determinative.

[11]The statute under which the Petitioner was charged and convicted, West Virginia Code § 61-7-11, provides that the Petitioner must have brandished or used "a weapon in a way or manner to cause, or threaten, a breach of the peace."

storm door.  When Debbie Showalter heard her daughter's cries for help, she grabbed an aluminum mop handle and jabbed the Petitioner in an effort to help Susan Showalter free herself from the broken door.  The Petitioner then took the mop handle away from Debbie Showalter.  As Debbie Showalter called the police, the Petitioner went to the kitchen to obtain the knives, and he escalated the altercation.  Debbie Showalter reported the Petitioner's act of obtaining knives to the 911 operator, and the Petitioner thereafter dropped the knives.

Upon thorough review of the chronology of the physical altercation, this Court finds no error in the trial court's conclusion that the Petitioner violated West Virginia Code § 61-7-11 by brandishing the knives "in a way or manner to cause, or threaten, a breach of the peace."  We consequently find no merit to the Petitioner's contentions on this issue.

## C.  Attempt to Call Witness

The Petitioner also argues the trial court erred by preventing him from calling Ms. Ashley Hudson as a witness.  Ms. Hudson was his girlfriend and was also in the house at the time of the incident.  Although the Petitioner did not call Ms. Hudson as a witness in the magistrate court trial, he attempted to call her in the circuit court trial.  He contends that her testimony could have corroborated his statements, aiding in proving his assertions regarding self-defense.

The State objected to the calling of Ms. Hudson as a witness, arguing that the Petitioner had not provided a witness list or otherwise notified the State of his intention to call her.  Moreover, she had not been called as a witness in the magistrate court bench trial.  The Petitioner asserted that he failed to notify the State of his intention to call Ms. Hudson only because neither the State nor the trial court had notified his defense counsel of the trial date.  Defense counsel had inadvertently learned of the trial the day immediately prior to the date it was scheduled.[12]

---

[12]Prior to the appellate hearing in this matter, the State participated in an ex parte conversation with the trial judge regarding removal of the Petitioner's counsel due to the fact that the Petitioner's sentence in magistrate court did not include confinement in jail and was limited to a fine.  Thus, pursuant to West Virginia Code § 29-21-2 (2013), the Petitioner would no longer qualify for court-appointed counsel.  In *State ex rel. Kees v. Sanders*, 192 W.Va. 602, 453 S.E.2d 436 (1994), this Court held that the statute does not entitle a defendant to publicly funded legal representation in an appeal from a conviction in which a jail sentence was not imposed.  *Id.* at 606, n.10, 453 S.E.2d at 440, n.10.  When the circuit court ordered a bench trial set for June 3, 2015, it did not notice counsel for the Petitioner.

(continued...)

On appeal, the State argues Ms. Hudson would not have been permitted to testify, regardless of whether she had been included in a witness list. The State relies upon West Virginia Code § 50-5-13(d) (2016), arguing that it prohibits introduction of testimony that was not presented in the magistrate court below. Specifically, that section provides:

> In the case of an appeal of a criminal proceeding tried without a jury, the party seeking the appeal shall file with the circuit court a petition for appeal and trial de novo. The exhibits, together with all papers and requests filed in the proceeding, constitute the exclusive record for appeal and shall be made available to the parties.

W.Va. Code § 50-5-13(d). In *State ex rel. Collins v. Bedell*, 194 W.Va. 390, 460 S.E.2d 636 (1995), this Court explained that on appeal of a conviction in magistrate court, "the circuit court takes on the role of a reviewing court, not unlike this Court, rather than a trial court. . . ." *Id.* at 395, 460 S.E.2d at 641.

This Court agrees with the State that Ms. Hudson could not be called as a witness in the appeal to circuit court. The Petitioner did not object and acquiesced at the time the circuit court ruled that Ms. Hudson would not be permitted to testify because she did not testify at the magistrate court level.[13] Consequently, the alleged error was not properly

---

[12](...continued)
Counsel for the Petitioner learned of the scheduled trial on the day immediately prior to trial when he telephoned the circuit court secretary to inquire about whether the matter had been set for a hearing. Upon learning of the scheduled trial date, counsel for the Petitioner immediately informed the circuit court that he would continue to represent the Petitioner pro bono. Thus, the Petitioner did not lose his counsel, and he did not move for a continuance. Significantly, he did not assign any error in this Court to the ex parte communication, the attempt to remove his counsel, or the lack of notice to his counsel.

[13]The State maintains that because Ms. Hudson had not been called as a witness in the underlying magistrate court trial, her previously unheard testimony would have been improper for purposes of appeal to the circuit court. West Virginia Code § 50-5-13(d) does not expressly refer to "witness testimony" on appeal from magistrate court to circuit court, by confining the "exclusive record for appeal" to the "exhibits, together with all papers and requests filed in the proceeding," but the statute does appear to limit new evidence to be included on appeal.

preserved for appeal to this Court.[14]

IV.  Conclusion

Based upon the foregoing, this Court affirms the Petitioner's conviction and sentence.

Affirmed.

ISSUED:  November 3, 2016

CONCURRED IN BY:
Chief Justice MENIS E. KETCHUM
Justice ROBIN JEAN DAVIS
Justice MARGARET L. WORKMAN
Justice ALLEN H. LOUGHRY II

DISSENTING:
Justice BRENT D. BENJAMIN

---

[14]The Petitioner's arguments regarding failure to notify his counsel of the trial date are well-founded; however, the circuit court's basis for Ms. Hudson's exclusion was her absence as a witness in the magistrate court trial.  Thus, the difficulties occasioned by the failure to notify defense counsel of the trial date, while troubling, are not relevant to the fact that Ms. Hudson could not have been called as a witness on appeal.  Moreover, the Petitioner did not assign error to the trial court's failure to notify his counsel of the scheduled trial date.