State of West Virginia,
Plaintiff Below, Respondent

**FILED**

**December 5, 2016**

RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) No. 15-0684 (Fayette County Case Number 15-M-AP-2)

Scott A. Neal,
Defendant Below, Petitioner

### AMENDED MEMORANDUM DECISION

Mr. Scott A. Neal (hereinafter "the Petitioner"), by counsel Brandon Steele, Esq., appeals his conviction for brandishing a deadly weapon, subsequent to a bench trial in the Circuit Court of Fayette County, West Virginia. Respondent State of West Virginia, by counsel Patrick Morrisey, Esq., and Shannon Kiser, Esq., filed a response to the Petitioner's appeal. The Petitioner contends his conviction should be reversed because his actions constituted self-defense in response to his assailants.

Having thoroughly reviewed the appendix record, the parties' briefs and oral arguments, the applicable law, and all other matters before the Court, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

### I. Factual and Procedural History

On February 11, 2015, Susan Showalter and her mother, Debbie Showalter, attended a mediation in Fayette County Family Court concerning the custody and placement of Susan Showalter's minor son. The father of the child is Steve Neal, the Petitioner's brother. Steve Neal failed to attend the mediation, and the Showalters thereafter drove to his home, entered the home uninvited,[1] and attempted to remove the minor child. Upon discovering the Showalters in his home, Steve Neal attempted to physically prevent them

---

[1]Susan Showalter stated that Vickie Jones, the Family Court Clerk, had told her that she could go to the Neal residence and try to remove her child.

1

from removing the child. The Petitioner, who had been living with his brother for four months, was awakened by the altercation and exited his bedroom to discover his brother fighting with Susan Showalter over the minor child.

Susan Showalter testified that the Petitioner held her by the throat up against a wall and pushed her into a storm door, breaking the glass door and causing lacerations on her arms. Debbie Showalter also explained that she hit the Petitioner with an aluminum mop handle to prevent further harm to her daughter as the Petitioner was attacking her. The Petitioner explained the event somewhat differently, stating that the fighting was in close proximity to the front doorway and that Susan Showalter was inadvertently pushed into the door. The Petitioner contends that Susan Showalter struck him in the face and head-butted him while her mother attacked him with the mop handle. He ultimately obtained knives from the kitchen to compel the Showalters to leave the premises.[2]

Debbie Showalter called 9-1-1while still at the residence and informed the operator that the Petitioner had "gotten knives." Debbie Showalter and Susan Showalter thereafter waited outside the home for the arrival of law enforcement. Deputy Richie Callison of the Fayette County Sheriff's Department arrived and interviewed the Petitioner, Steve Neal, Debbie Showalter, and Susan Showalter. Deputy Callison arrested Susan Showalter for trespassing, battery, and domestic battery; Debbie Showalter for assault;[3] Steve Neal for domestic battery; and the Petitioner for brandishing.[4]

On May 5, 2015, the Petitioner was convicted, following a Fayette County Magistrate Court bench trial, of the misdemeanor offense of brandishing a deadly weapon,

---

[2]The parties disagree regarding the types of knives the Petitioner obtained from the kitchen. Susan Showalter claims the knives were steak knives. Debbie Showalter simply described them as a "handful of knives," and the Petitioner claims the knives were butter knives.

[3]Debbie Showalter testified at trial that she had pled "no contest" and that Susan Showalter had "pled guilty to domestic battery and no contest to the other two" charges.

[4]Deputy Callison testified that the Petitioner told him "that it was basically over when he went and got the knife in the kitchen." Further, Deputy Callison said the Petitioner "turned to face them [the Showalters], stated some type of statement saying that he was going to get them out of there, realized he was wrong and dropped the knife."

in violation of West Virginia Code § 61-7-11 (2014).[5] He was sentenced to a $50.00 fine and assessed court costs. No jail time was imposed. On May 21, 2015, the Petitioner appealed his conviction to the Circuit Court of Fayette County.[6]

The appellate trial[7] commenced on June 16, 2015, with Deputy Callison, Susan Showalter, and Debbie Showalter testifying for the State. At the close of the State's case, the Petitioner moved the circuit court to dismiss[8] the action based upon the theory of self-defense. The circuit court denied that motion, finding that although the Showalters had entered the Neal home without permission, the Petitioner's self-defense argument was not credible. The circuit court noted the size differences between the women and the men, recognizing that the Petitioner "appears to be a good-sized individual that could have easily handled the witness, Susan Showalter."[9]

During presentation of the defense, counsel for the Petitioner attempted to call the Petitioner's girlfriend, Ashley Hudson, as a witness. She was also in the home at the time

---

[5]West Virginia Code § 61-7-11 provides:

It shall be unlawful for any person armed with a firearm or other deadly weapon, whether licensed to carry the same or not, to carry, brandish or use such weapon in a way or manner to cause, or threaten, a breach of the peace. Any person violating this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than fifty nor more than one thousand dollars, or shall be confined in the county jail not less than ninety days nor more than one year, or both.

[6]According to the "Order Scheduling Bench Trial," entered May 21, 2015, notice of the scheduled trial was sent to the Petitioner. On the scheduled trial date of June 3, 2015, however, the Petitioner did not appear at the bench trial because he had not received notice at the address he had placed on his appeal documents from magistrate court. Thus, the trial was rescheduled for June 16, 2015.

[7]*See* W.Va. Code § 50-5-13(d) (2016) (permitting appeal of criminal proceeding from magistrate court for new trial in circuit court).

[8]Although the motion was identified as a motion "to dismiss," it is more properly characterized as a motion for judgment of acquittal.

[9]Testimony indicated that the Petitioner's brother was approximately 6'1" or 6'2" and weighed approximately 300 pounds. The Petitioner was 6'3" and weighed 198 pounds.

3

of the incident, but she had not testified in magistrate court. The State objected, based upon Ms. Hudson's absence on a witness list prior to the hearing. Despite the Petitioner's assertion that the trial had not been properly noticed, as more fully discussed below, the circuit court prohibited the offered testimony based upon the absence of Ms. Hudson's testimony during the magistrate trial on this matter.

By order dated June 25, 2015, the circuit court held that "the State has proven beyond a reasonable doubt that the Petitioner committed the misdemeanor offense of brandishing a deadly weapon on February 11, 2015, and he is adjudged guilty of the same." The Petitioner appeals to this Court.

## II. Standard of Review

"This Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W.Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citing *State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996)); *accord State v. Minigh*, 224 W.Va. 112, 124, 680 S.E.2d 127, 139 (2009). We apply the following standard for reviewing a judgment entered after a bench trial:

> "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a de novo review." Syllabus Point 1, *Public Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

Syl. Pt. 1, *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006).

Addressing the standard for challenges to the sufficiency of the evidence, this Court explained as follows in syllabus point three of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and

4

must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

In syllabus point one of *Guthrie,* we held:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

194 W.Va. at 658, 461 S.E.2d at 164.

Employing these standards as guidance, we address the arguments of the parties.

### III. Discussion

#### A. Self-Defense

The Petitioner first contends that the circuit court improperly denied his motion for acquittal based upon the State's failure to meet the burden of proof beyond a reasonable doubt. He maintains that the evidence is insufficient to sustain his conviction because he acted in self-defense. In that vein, he argues that the circuit court misapplied the standard for self-defense set forth in *State v. Phelps*, 172 W.Va. 797, 310 S.E.2d 863 (1983), by limiting self-defense to those situations where the Petitioner would be in danger of "serious bodily injury or death." The Petitioner argues that the court should have permitted an argument of self-defense where an unlawful intruder threatens imminent physical violence

5

and the occupant reasonably believes deadly force is necessary. In syllabus point five of *Phelps,* this Court explained*:*

> "The occupant of a dwelling is not limited in using deadly force against an unlawful intruder to the situation where the occupant is threatened with serious bodily injury or death, but he may use deadly force if the unlawful intruder threatens imminent physical violence or the commission of a felony and the occupant *reasonably believes* deadly force is necessary.' Syl. Pt. 2, *State v. W.J.B.*, 166 W.Va. 602, 276 S.E.2d 550 (1981).

Thus, in order to prevail on a claim of self-defense, the occupant of a dwelling must show a *reasonable* apprehension of imminent peril. The existence of *reasonable apprehension* must be determined by the trier of fact; in the case of a bench trial, the trier of fact is the trial court. "This Court confers great deference to credibility determinations made following a bench trial because the circuit court has viewed the demeanor of the witnesses." *In re J.S.*, 233 W.Va. 394, 408, 758 S.E.2d 747, 761 (2014); *see also Guthrie,* 194 W.Va. at 669 n.9, 461 S.E.2d at 175 n.9 ("An appellate court may not decide the credibility of witnesses . . . as that is the exclusive function and task of the trier of fact."). Moreover, in syllabus point one of *State v. Schaefer*, 170 W.Va. 649, 295 S.E.2d 814 (1982), this Court held:

> "It is peculiarly within the province of the jury to weigh the evidence upon the question of self-defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence." Syllabus Point 5, *State v. McMillion*, 104 W.Va. 1, 138 S.E. 732 (1927).

Addressing the Petitioner's argument regarding self-defense, the circuit court evaluated the question of whether the Petitioner had reason to brandish the knives and found that the Petitioner could not have *reasonably* perceived any danger, due to the extreme size and physical advantage the men enjoyed over the two women during the physical altercation in the home. Further, the trial court concluded that although the Petitioner did not initiate the altercation between Ms. Showalter and the Petitioner's brother, the Petitioner was clearly the aggressor once he became involved. The trial court found that the Petitioner was therefore not entitled to utilize the affirmative defense of self-defense in this particular instance.

This Court, viewing the evidence in the light most favorable to the State, concludes that a rational trier of fact could have found beyond a reasonable doubt that the

Petitioner did not act in self-defense. The most convincing evidence suggesting an act of self-defense consisted of the Petitioner's testimony that he was assaulted by Susan Showalter. However, a fair reading of the record could also compel the conclusion that this domestic altercation essentially consisted of combat by all four adults. In assessing the credibility of the witnesses, a task well within the discretion of the trial court in this bench trial, the Petitioner was found to be less credible on the issue of self-defense. The trial court specifically stated: "But his [the Petitioner's] testimony, I find not to be credible, I find not to be believable." Further, the order specifies that "[t]he Court finds the defendant's testimony regarding the events to not be credible." A trial court must assess credibility and draw reasonable inferences from the evidence; this Court perceives nothing in the record that would require us to substitute our judgment for that of the trial court. Accordingly, we must reject the Petitioner's argument in this regard.[10]

### B. Brandishing Charge Requires Breach of Peace

The Petitioner also contends the trial court erred in failing to make a specific finding that he "breached the peace" by brandishing the knives.[11] According to the Petitioner, the Showalters initially breached the peace by unlawfully trespassing into the home, starting a physical altercation, and assaulting the Petitioner with a broom handle. Consequently, the Petitioner argues it was impossible for him to have "breached" the peace when it had already been breached by the Showalters. In response, the State contends the facts clearly demonstrate that the Petitioner brandished knives against unarmed women over whom he held a significant size advantage. Further, the State argues that any failure by the trial court to specifically state that the Petitioner breached the peace was harmless, based upon the clarity of the record.

Reviewing the evidence in a light most favorable to the State, it appears that the Petitioner entered the room and became the aggressor in the fight after he was awakened by the scuffle. He pushed Susan Showalter against a wall and shoved her through a glass

---

[10]We note that the Petitioner also contends the trial court erred in finding that he was not a resident of the home. Based upon our review of the evidence and the trial court's rulings, we find this to be harmless, in light of the trial court's finding that the Petitioner had no *reasonable* apprehension of imminent harm and was therefore not engaged in the act of self-defense when he brandished the knives. Thus, his residency at his brother's home is not determinative.

[11]The statute under which the Petitioner was charged and convicted, West Virginia Code § 61-7-11, provides that the Petitioner must have brandished or used "a weapon in a way or manner to cause, or threaten, a breach of the peace."

storm door. When Debbie Showalter heard her daughter's cries for help, she grabbed an aluminum mop handle and jabbed the Petitioner in an effort to help Susan Showalter free herself from the broken door. The Petitioner then took the mop handle away from Debbie Showalter. As Debbie Showalter called the police, the Petitioner went to the kitchen to obtain the knives, and he escalated the altercation. Debbie Showalter reported the Petitioner's act of obtaining knives to the 911 operator, and the Petitioner thereafter dropped the knives.

Upon thorough review of the chronology of the physical altercation, this Court finds no error in the trial court's conclusion that the Petitioner violated West Virginia Code § 61-7-11 by brandishing the knives "in a way or manner to cause, or threaten, a breach of the peace." We consequently find no merit to the Petitioner's contentions on this issue.

## C. Attempt to Call Witness

The Petitioner also argues the trial court erred by preventing him from calling Ms. Ashley Hudson as a witness. Ms. Hudson was his girlfriend and was also in the house at the time of the incident. Although the Petitioner did not call Ms. Hudson as a witness in the magistrate court trial, he attempted to call her in the circuit court trial. He contends that her testimony could have corroborated his statements, aiding in proving his assertions regarding self-defense.

The State objected to the calling of Ms. Hudson as a witness, arguing that the Petitioner had not provided a witness list or otherwise notified the State of his intention to call her. Moreover, she had not been called as a witness in the magistrate court bench trial. The Petitioner asserted that he failed to notify the State of his intention to call Ms. Hudson only because neither the State nor the trial court had notified his defense counsel of the trial date. Defense counsel had inadvertently learned of the trial the day immediately prior to the date it was scheduled.[12]

---

[12]Prior to the appellate hearing in this matter, the State participated in an ex parte conversation with the trial judge regarding removal of the Petitioner's counsel due to the fact that the Petitioner's sentence in magistrate court did not include confinement in jail and was limited to a fine. Thus, pursuant to West Virginia Code § 29-21-2 (2013), the Petitioner would no longer qualify for court-appointed counsel. In *State ex rel. Kees v. Sanders*, 192 W.Va. 602, 453 S.E.2d 436 (1994), this Court held that the statute does not entitle a defendant to publicly funded legal representation in an appeal from a conviction in which a jail sentence was not imposed. *Id.* at 606, n.10, 453 S.E.2d at 440, n.10. When the circuit court ordered a bench trial set for June 3, 2015, it did not notice counsel for the Petitioner.
(continued...)

On appeal, the State argues Ms. Hudson would not have been permitted to testify, regardless of whether she had been included in a witness list. The State relies upon West Virginia Code § 50-5-13(d) (2016), arguing that it prohibits introduction of testimony that was not presented in the magistrate court below. Specifically, that section provides:

> In the case of an appeal of a criminal proceeding tried without a jury, the party seeking the appeal shall file with the circuit court a petition for appeal and trial de novo. The exhibits, together with all papers and requests filed in the proceeding, constitute the exclusive record for appeal and shall be made available to the parties.

W.Va. Code § 50-5-13(d). In *State ex rel. Collins v. Bedell*, 194 W.Va. 390, 460 S.E.2d 636 (1995), this Court explained that on appeal of a conviction in magistrate court, "the circuit court takes on the role of a reviewing court, not unlike this Court, rather than a trial court. . . ." *Id.* at 395, 460 S.E.2d at 641.

This Court agrees with the State that Ms. Hudson could not be called as a witness in the appeal to circuit court. The Petitioner did not object and acquiesced at the time the circuit court ruled that Ms. Hudson would not be permitted to testify because she did not testify at the magistrate court level.[13] Consequently, the alleged error was not properly

---

[12](...continued)
Counsel for the Petitioner learned of the scheduled trial on the day immediately prior to trial when he telephoned the circuit court secretary to inquire about whether the matter had been set for a hearing. Upon learning of the scheduled trial date, counsel for the Petitioner immediately informed the circuit court that he would continue to represent the Petitioner pro bono. Thus, the Petitioner did not lose his counsel, and he did not move for a continuance. Significantly, he did not assign any error in this Court to the ex parte communication, the attempt to remove his counsel, or the lack of notice to his counsel.

[13]The State maintains that because Ms. Hudson had not been called as a witness in the underlying magistrate court trial, her previously unheard testimony would have been improper for purposes of appeal to the circuit court. West Virginia Code § 50-5-13(d) does not expressly refer to "witness testimony" on appeal from magistrate court to circuit court, by confining the "exclusive record for appeal" to the "exhibits, together with all papers and requests filed in the proceeding," but the statute does appear to limit new evidence to be included on appeal.

9

preserved for appeal to this Court.[14]

### IV. Conclusion

Based upon the foregoing, this Court affirms the Petitioner's conviction and sentence.

Affirmed.

ISSUED: December 5, 2016


CONCURRED IN BY:
Chief Justice MENIS E. KETCHUM
Justice ROBIN JEAN DAVIS
Justice MARGARET L. WORKMAN
Justice ALLEN H. LOUGHRY II

DISSENTING AND WRITING SEPARATELY:
Justice BRENT D. BENJAMIN


Benjamin, Justice, dissenting:

The right that West Virginians should have to use reasonable force to protect themselves and their loved ones in their homes from violent intruders intent on committing unlawful acts has been severely eroded by the Majority decision. That this Court should now accord safety rights to violent criminals in home intrusions while denying the right of a family member to reasonably protect himself or his family is deplorable. I therefore dissent.

---

[14]The Petitioner's arguments regarding failure to notify his counsel of the trial date are well-founded; however, the circuit court's basis for Ms. Hudson's exclusion was her absence as a witness in the magistrate court trial. Thus, the difficulties occasioned by the failure to notify defense counsel of the trial date, while troubling, are not relevant to the fact that Ms. Hudson could not have been called as a witness on appeal. Moreover, the Petitioner did not assign error to the trial court's failure to notify his counsel of the scheduled trial date.

The right to protect ourselves or our loved ones from violent intruders who have unlawfully entered our homes dates back through civilized society at least as far as early English common law. Simply put, the law should work to protect you and your family in your home and on your premises.

Petitioner, Scott Neal, along with his girlfriend, lived with his brother, Steve Neal, and his nephew at a residence in Ansted. It is unrebutted that the boy's mother, Susan Showalter,[1] and her mother, Debbie Showalter, determined to travel to Petitioner's residence, uninvited and unannounced, for the purpose of unlawfully entering the residence and taking the child despite having no lawful order to do so. With her mother, Debbie, waiting outside, Susan Showalter furtively entered the residence and was caught by Steve Neal in the act of taking the child and attempting to flee. Despite being directed to leave without the child, Susan Showalter continued to press her unlawful conduct. There can be no question that this unlawful conduct by Susan Showalter breached the peace. This refusal to leave escalated the situation.

Hearing the commotion, Petitioner emerged from his bedroom and witnessed his brother, who was lawfully present, in an altercation with Susan Showalter, who was not lawfully present, with his nephew in-between. Petitioner sought to aid his brother and nephew and he himself got into a physical conflict with Susan Showalter. She claimed he grabbed her by the throat, held her against a wall and ultimately pushed her into or through the storm door. Petitioner claimed that he was struck in the face by Susan, that she head-butted him, and that her fall into the storm door was inadvertent due to her being in front of the door during the altercation. Susan received a laceration on her wrist. Thereupon, Susan's mother, Debbie Showalter, interceded.[2] Debbie Showalter grabbed an aluminum mop handle and hit the Petitioner. In response, Petitioner retreated into the kitchen and emerged with a knife which he claimed came from the sink area.[3] Upon him showing the knife, Debbie Showalter called 9-1-1 and the Showalters retreated to the outside to await the arrival of law enforcement.

---

[1] Steve Neal and Debbie Showalter were in the midst of a custody dispute over the boy at the time of this incident.

[2] According to Debbie Showalter, she acted because she felt she needed to come to the aide of her daughter.

[3] There is a disagreement as to the type of knife Petitioner wielded and whether Petitioner may have grabbed more than one knife. Susan Showalter stated that the knife was a steak knife. Petitioner contended that the knife was a butter knife. For purposes of this case, it is sufficient that Petitioner had a knife which he wielded.

Petitioner, his brother, and the Showalters were all charged with various crimes. Susan Showalter pled no contest to battery and trespassing. She also pled guilty to domestic battery. Debbie Showalter pled no contest to assault. Petitioner was charged with brandishing, to which he pled not guilty. The record is unclear whether he was charged with assault, battery, domestic battery, or any other defense. He was ultimately convicted of brandishing.

I dissent on a number of grounds. First, it was not possible, as required by W.Va. Code § 61-7-11 (Brandishing), for Petitioner to breach a peace that had already been thoroughly destroyed by the conduct of the Showalters. Causing or threatening to cause a breach of the peace is a necessary requirement for a conviction of brandishing. Second, based upon the facts of this case, Petitioner used reasonable and proportionate force, i.e., the waiving without contact of a knife, to terminate the attackers' unlawful entry which did, in fact, de-escalate what had become a violent confrontation. At the point of Petitioner waiving the knife, the confrontation had already grown from a verbal exchange, to physical combat, to the assault of Petitioner by Debbie Showalter with a weapon in the form of an aluminum handle. There was every reason to believe that the situation would continue to escalate without some action to non-physically defuse the situation. Petitioner acted to protect himself and the other lawful occupants of the home, including his young nephew. Third, I believe Petitioner was entitled to an acquittal on the grounds that he acted in self-defense. I disagree with the circuit court's determination, with which the majority of this Court agrees, that Petitioner could not establish that he acted in self-defense because the physical size difference between Petitioner and the intruders to his home could not have put him in reasonable apprehension of imminent peril.

The Court has long held that "[a] man attacked in his own home by an intruder may invoke the law of self-defense without retreating." Syl. pt. 4, State v. Preece, 116 W. Va. 176, 179 S.E. 524 (1935). With regard to the amount of force that may be used in self-defense, the Court has held that

> [t]he amount of force that can be used in self-defense is that normally one can return deadly force only if he reasonably believes that the assailant is about to inflict death or serious bodily harm; otherwise, where he is threatened only with non-deadly force, he may use only non-deadly force in return.

Syl. pt. 1 of State v. Baker, 177 W. Va. 769, 356 S.E.2d 862 (1987). Deadly force may only be applied against an unlawful intruder by the occupant of a dwelling when the "intruder threatens imminent physical violence . . . and the occupant reasonably believes deadly force

12

is necessary." Syl. pt. 5, in part, State v. Phelps, 172 W. Va. 797, 310 S.E.2d 863 (1983); see also State v. Gravely, 66 W. Va. 375, 66 S.E. 503 (1909) ("Whether the use of [a deadly] weapon is justified, must depend upon the fact whether the party was in imminent peril of receiving great bodily harm, or had reasonable ground to so believe, and that such act was necessary to prevent the same." (quoting Davis v. People, 88 Ill. 350 (1878)).

The undisputed evidence adduced below shows that two adult women, Susan Showalter and Debbie Showalter, unlawfully entered the home in which Petitioner resided; that the women were uninvited and their entry was unannounced; that the women became violent while trying to take a minor child occupant from the home; that the women were directed to leave and did not do so; and that the peace was breached by the women's conduct. There is also no dispute that Debbie Showalter escalated the situation by her resort to and use of a weapon[4] striking Petitioner with an aluminum mop handle, and that Petitioner responded by obtaining a knife or knives from the kitchen to compel the women to leave. Petitioner did not cause a knife to make physical contact with either woman.

With respect to the charge of unlawful brandishing of a weapon, the circuit court failed to find that it was Petitioner who caused or threatened a breach of the peace. The record amply demonstrates that the peace had already been shattered by the unlawful actions of the Showalters in Petitioner's residence and that Petitioner's resort to brandishing actually de-escalated the situation and stopped the violence.

With respect to the Petitioner's assertion of self-defense, the circuit court did not make a finding that Petitioner intended to use a knife to inflict harm upon the women; it simply concluded that Petitioner could not have reasonably believed that deadly force was necessary. Without such a finding, there is no support for the circuit court's conclusion that Petitioner used "deadly force" at all. See Commonwealth v. Cataldo, 668 N.E.2d 762 (Mass. 1996) (finding that where a deadly weapon is not used in its intended deadly manner, i.e., brandishing a firearm but not firing it, whether the use constitutes "deadly force" is a question of fact). If Petitioner's act in brandishing a knife is not deadly force, then the force—presenting a knife such that it did not come into contact with anyone—was certainly

_____

[4] That Debbie Showalter may have personally felt justified in her resort to a weapon to aide her daughter does not change the analysis. She and her daughter were present unlawfully and both had been directed to leave. The Showalters, not Petitioner or the other occupants, had a duty to retreat. To the extent that the Showalters believed they were in the right, they were obligated to first get a lawful order. At a minimum, they were obligated to leave without escalating the situation and to contact law enforcement to peacefully resolve the matter. They were not entitled to a resort to "self-help" which, as this case shows, may escalate to violence and cause a lasting impact on the innocent child.

13

proportional to Debbie Showalter's physical attack of Petitioner with a metal mop handle. However, assuming arguendo that Petitioner's act of brandishing of a knife constituted deadly force, the evidence establishes that such force was justified in this case. Debbie Showalter escalated the situation and admitted to beating Petitioner with a metal mop handle, which unquestionably presented a threat of great bodily harm to Petitioner.

Under the law of this State, the relative sizes of participants to the altercation should not be the sole deciding factor in establishing whether a person may act in self-defense, especially where there is more than one perpetrator causing a person to act and one of the perpetrators, albeit being physically smaller in stature, uses a weapon against the larger party. By implicitly holding otherwise, the majority essentially decides that

> in every conceivable case of a violent attack upon one by another, no matter what the circumstances may be, no matter what the disparity between the ages and physical strength of the two may be, the assaulted party must stand and take his chances of being knocked down and stamped into a jelly, or of being choked to death before he can lawfully use a weapon in his defense.

Gravely, 66 W. Va. at ___, 66 S.E. at 505. I believe that a person has a right to use reasonable force or actions to protect himself from being physically assaulted in his own home by an unlawful intruder, regardless of the relative sizes of the occupant and the intruder, especially where the intruder has resorted to the use of a weapon against the occupant. Because the majority's decision implies otherwise, I dissent.

14